**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANNY LEE HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:07-cv-452-MEF-WC** |
| | ) | |
| **LATHONIA J. WRIGHT,** | ) | |
| **COMMISSIONER, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS JEFFREY FULLER,
SHIRLEY JOHNSON, AND CRAIG DAVIDSON'S
MOTION TO VACATE AND TERMINATE
ORDER ENTERED MAY 25, 2007**

COME NOW Defendants Sheriff Jeffrey Fuller, Jail Administrator Shirley Johnson, and Captain Craig Davidson, sued in their official capacities,[1] and submit this Memorandum Brief in support of their contemporaneously filed Motion to Vacate and Terminate the Court's Order of May 25, 2007, granting Plaintiff's Motion for a Temporary Restraining Order and taxing the fees and expenses of Plaintiff's counsel against Defendants.

**PROCEDURAL BACKGROUND**

On May 21, 2007, Plaintiff filed a pro se Complaint naming Lathonia J. Wright, all Randolph County Commissioners, Sheriff Jeffrey Fuller, Jail Administrator Shirley Johnson, and

---

[1]Jeffery Fuller is sued as the "Jeff Fuller, Sheriff." <u>See</u> Caption of Complaint.  He is identified in the Complaint as "Sheriff of Randolph County." <u>See</u> Complaint, ¶ 2.  It should be assumed that the Plaintiff has sued Sheriff Fuller in his official capacity. <u>See</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1024 n.4 (11th Cir. 2001) (en banc) (concluding that a Court would "decide th[e] case as one in which the complaint purports to sue the Sheriff in both her official and individual capacities," even though the text of the complaint did not state an individual capacity claim, because "the parties and the district judge clearly litigated the case in that way").  Likewise, Shirley Johnson and Craig Davidson are sued as "Shirley Johnson, Jail Administrator" and "Craig Davidson, Jail Official," respectively.

Captain Craig Davidson as Defendants.[2]  On May, 21, 2007, the Court construed Plaintiff's Complaint to include Motions for a Temporary Restraining Order and a Preliminary Injunction. The Court issued no written Order, but entered the Order on the Court's online case-action summary.  Undersigned counsel for Defendants, C. Richard Hill, Jr., received a telephone call from the Court on or before May 22, 2007, requesting the name and number of the Randolph County Attorney.  Mr. Hill provided the Court the name of John Tinney, but was refused any information as to the nature of the matter.

On May 23, 2007, the Court held a telephone status conference on the Motion for Temporary Restraining Order.  Neither Defendants, nor their counsel, received notice of this "status conference."  (Exhibit A, Declaration of Jeffery Fuller, "Fuller Decl.," ¶ 19.)  The undersigned have no record of what transpired during that status conference.  Attorney Kesa Johnston was present at the status conference on behalf of Plaintiff (when she was appointed to represent) and John Tinney, the Randolph County Attorney, on behalf of Randolph County.[3] There was no counsel present at the "status conference" on behalf of Defendants Fuller, Johnson, and Davidson.  (Ex. A, Fuller Decl. ¶ 18.)  Counsel for Defendants did not receive notice of the May 23, 2007 status conference until after it had transpired.

John Tinney is not the attorney of record for Defendants, nor has he ever represented Defendants in prior litigation.  (Ex. A, Fuller Decl. ¶ 16; Exhibit B, Declaration of Shirley

---

[2] The Magistrate Judge recommended Defendants Lathonia J. Wright, and "All Randolph County Commissioners" be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) and (iii) prior to service.  See Turquitt v. Jefferson County, Alabama, 137 F.3d 1285, 1289 (11th Cir. 1998) (County commissioners cannot be held liable for actions undertaken during the daily operation of a county jail); Woods v. Gamel, 132 F.3d 1417, 1420 (11th Cir. 1998) ("The budgetary decisions made by defendants for funding the county – including the jail – are legislative acts protected by legislative immunity.")  Defendants Wright and "All Randolph County Commissioners" have neither been served with a copy of the Complaint nor with this Court's Order.  Although this Motion to Vacate and Terminate is submitted on behalf of any Defendants considered bound by the Court's Order, any references to "Defendants" herein refers only to Sheriff Jeffery Fuller, Jail Administrator Shirley Johnson, and Captain Craig Davidson, unless otherwise specified.

[3] When Mr. Tinney appeared at the telephone conference, he was out of his office and had not received a copy of the

Johnson, "Johnson Decl.," ¶ 16; Exhibit C, Declaration of Craig Davidson, "Davidson Decl.," ¶ 17.) On May 24, 2007 or May 25, 2007, Defendants were finally served with Plaintiff's Complaint. (Ex. A, Fuller Decl. ¶ 10; Ex. B, Johnson Decl. ¶ 14.) Immediately upon receipt of Plaintiff's Complaint, Defendants contacted their attorneys, the undersigned counsel of record. Undersigned counsels' firm has represented Defendants in prior jail litigation involving the Randolph County Jail that named them as parties. (Ex. A, Fuller Decl. ¶ 20; Ex. B, Johnson Decl. ¶ 18; Ex. C, Davidson Decl. ¶ 20.)

Defendants first received notice of Plaintiff's Complaint on May 24, 2007, at the earliest, one day after the Court held its "status conference" on the Motion for Temporary Restraining Order. (Ex. B, Johnson Decl. ¶ 14.) The Court entered its Order on May 25, 2007.

## ARGUMENT

**I. THIS COURT'S ORDER OF MAY 25, 2007, VIOLATES DEFENDANTS' FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW, AS COFIED IN RULE 65, FED. R. CIV. P., BY GRANTING A TEMPORARY RESTRAINING ORDER WITHOUT PROVIDING DEFENDANTS AN OPPORTUNITY TO OPPOSE THE MOTION FOR A TEMPORARY RESTRAINING ORDER.**

**A. THIS COURT'S ORDER DEPRIVED DEFENDANTS OF THEIR FIFTH AMENDMENT RIGHT TO DUE PROCESS BY GRANTING THE MOTION FOR A TEMPORARY RESTRAINING ORDER WITHOUT PROVIDING DEFENDANTS THE OPPORTUNITY TO OPPOSE THE MOTION.**

The Fifth Amendment prohibits the federal government from depriving a person of his property rights without the due process of law. The text of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." It is undisputed that the Court is an arm of the federal government. It is further undisputed that in entering a Temporary Restraining Order to compel Defendants to provide Plaintiff with medical treatment, the Court deprived Defendants of the funds necessary to ensure that

Complaint. Mr. Tinney, who advised the Court that he represented Randolph County, believed that Randolph

Plaintiff receives the medical attention ordered by the Court.[4]  Here, Defendants were neither

provided notice nor an opportunity to be heard and defend against the Motion for Temporary

Restraining Order.  Accordingly, the Court's Order of May 25, 2007, entering a Temporary

Restraining Order to compel Defendants to provide medical treatment to Plaintiff violates the

mandates of the Fifth Amendment's right to due process of law.  This Court should take the

opportunity to reconcile its Order with the provisions of the Fifth Amendment that provide

Defendants the right to due process of law.

> **B.**  **THIS COURT'S ORDER OF MAY 25, 2007, GRANTING THE MOTION FOR A TEMPORARY RESTRAINING ORDER VIOLATES DEFENDANTS' FIFTH AMENDMENT RIGHT TO BE HEARD AND OPPOSE THE MOTION AS CODIFIED IN RULE 65, FED. R. CIV. P.**

As the Fifth Circuit Court of Appeals stated in <u>Aetna Ins. Co. v. Hartshorn</u>, "The Due

Process clause of the Fifth Amendment shields the individual against arbitrary exercise of

governmental power by its guarantee that fundamental principles of justice and fair play not

be violated.  Two such fundamental principles, or minimal requirements, are <u>adequate notice</u>

and <u>opportunity to be heard or to defend</u>."  477 F.2d 97, 100 (5th Cir. 1973).  The right to

notice and an opportunity to be heard have been codified in Rule 65, Fed. Civ. Pro. Rule

65(b) provides:

> **Temporary Restraining Order; Notice; Hearing; Duration.** A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) <u>it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition</u>, and (2) <u>the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required</u> ….

---

County was a party.

[4] The County would ultimately be responsible for providing the funds necessary to cover the cost of Plaintiff's medical expenses.

(Emphasis added.)

This Court's Order of May 25, 2007, stated, "The Court has held a telephone conference with counsel for both parties regarding this case."  (May 25, 2007, Order, 1) (emphasis added).  However, counsel for Defendants did not receive notice of this case until May 24, 2007, when it received a fax from Cindy Arrington of the Randolph County Commission notifying Defendants' counsel that the Court had contacted John Tinney, Randolph County Attorney, about this lawsuit, and notifying Defendants' counsel that the Court had set the Plaintiff's Motion for a Preliminary Injunction for a status conference on June 6, 2007.  Defendants' counsel received no notice of the status conference held on May 23, 2007.

Here, it does not appear from the specific facts in Plaintiff's Complaint that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."  Perhaps because his Complaint did not originally seek a Temporary Restraining Order, Plaintiff alleged no facts in his Complaint that would suggest it even necessary to grant injunctive relief without providing notice to Defendants.  Neither did Plaintiff include an affidavit stating specific facts that demonstrate that he would suffer immediate and irreparable harm before Defendants could be heard in opposition to his Motions for Injunctive Relief.  Further, there is nothing in the record to suggest that Plaintiff's attorney certified to the Court in writing her efforts to give Defendants notice of Plaintiff's Motion for a Temporary Restraining Order and the reasons support the claim that notice should not be required.  In fact, Plaintiff's attorney could not possibly have provided this Court such written certification, because the Court's Order granting Plaintiff's Motion for a Temporary Restraining Order appointed Kesa Johnston as Plaintiff's counsel.

5

This Court attempted to circumvent the requirements of Rule 65(b), Fed. R. Civ. P., in its Order by suggesting that the requirements of Rule 65(b) do not apply where the nonmoving parties had notice of the hearing on the Temporary Restraining Order.  In footnote 1 of its Order, this Court stated, "It is unnecessary for the Court to comply with the requirements of Rule 65 of the Federal Rules of Civil Procedure for temporary restraining orders entered without notice, because in this case the nonmoving parties have notice."   (May 25, 2007, Order, 1, n.1.) Contrary to this Court's statement in footnote 1, Defendants received no notice of the Plaintiff's Complaint, much less the Court's decision to read into Plaintiff's Complaint separate motions for a Preliminary Injunction and a Temporary Restraining Order.  Neither did Defendants receive notice of the May 23, 2007, status conference on Plaintiff's Motion for Temporary Restraining Order.  (Ex. A, Fuller Decl. ¶ 19.)  Because this basis for this Court's rationale in granting Plaintiff's Motion for a Temporary Restraining Order is factually deficient, that portion of the Court's Order should be vacated.

Even if Defendants had received notice of the May 23, 2007, status conference, as the Court's Order suggests, the entry of Plaintiff's Temporary Restraining Order would still have violated Rule 65.  When a nonmovant has received notice of the hearing on a temporary restraining order, the purpose that underscores the difference between a Preliminary Injunction and a Temporary Restraining Order disappears, as this Court suggested in footnote 1 of its Opinion.  See Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 n.3 (11th Cir. 2003) ("The district court may convert a hearing for a temporary restraining order into a hearing for a preliminary injunction as long as the adverse party had notice of the hearing).  See United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir. 1986) (citing Dilworth v. Riner, 343 F.2d 226, 229 (5th Cir.1965)).  However, notice of the hearing on the Plaintiff's

Motion for a Temporary Restraining Order does not make it "unnecessary for the Court to comply with the requirements of Rule 65 of the Federal Rules of Civil Procedure." (May 25, 2007, Order, 1, n.1.) To the contrary, a nonmovant is still entitled to the protections of Rule 65, even when he has notice of the hearing. In <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County</u>, 415 U.S. 423 (U.S. 1974), the United States Supreme Court stated, "The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." 415 U.S. at 433 (citing <u>Sims v. Greene</u>, 161 F.2d 87 (3d Cir. 1947)).

Here, Defendants were not included in the hearing and, thus, had no opportunity to oppose the Plaintiff's Motion for Temporary Restraining Order. When this Court improvidently granted Plaintiff's Motion for Temporary Restraining Order, it did so in violation of the safeguards of Rule 65, Fed R. Civ. P. In <u>Jones v. Bock</u>, the United States Supreme Court noted Congress's ability to modify the procedural requirements that govern the federal courts. Discussing 42 U.S.C. §1997e(g), the provision in the PLRA that allows defendants to waive their right to reply, the Court aptly recognized that "when Congress meant to depart from the usual procedural requirements, it did so expressly." ___ U.S. ___, 127 S. Ct. 910, 921 (2007). As the Court indicated in <u>Jones v. Bock</u>, by enacting §1997e(g) of the PLRA, Congress expressly modified Rule 65, Fed. R. Civ. P., to add the requirement that a reply be filed before a Court may grant injunctive relief on a §1983 complaint. Here, the Magistrate Court entered an Order on May 23, 2007, requiring Defendants to file a Special Report and Reply to Plaintiff's Complaint. However, rather than wait for Defendants to comply with the Magistrate's Order and file a Reply this Court entered its Order two days later granting the Motion for Restraining Order and

awarding attorney's fees in violation of Rule 65, Fed. R. Civ. P. This Court should take the opportunity to reconcile its Order with Rule 65, Fed. R. Civ. P., and vacate the portion of that Order granting Plaintiff's Motion for Temporary Restraining Order.

## II.    THIS COURT'S ORDER OF MAY 25, 2007, DISREGARDS THE PROVISIONS OF THE PRISON LITIGATION REFORM ACT, 42 U.S.C. § 1997e.

The Court's adherence to mandates of the Prison Litigation Reform Act ("PLRA") is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by pro se litigants. See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA')."). As the Supreme Court recently noted in Jones v. Bock:

> Prisoner litigation continues to "account for an outsized share of filings" in federal district courts. Woodford v. Ngo, 548 U.S. ----, ----, n. 4, 126 S. Ct. 2378 (2006) (slip op., at 12, n. 4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. [footnote omitted] Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit. See Neitzke v. Williams, 490 U.S. 319, 327 [] (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. See Porter v. Nussle, 534 U.S. 516, 524, [] (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. **Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.**

127 S. Ct. at 914 (emphasis added). Uniform adherence to all the provisions of the PLRA, especially the grievance exhaustion requirement, is mandatory for both pro se litigants and the

Courts to ensure that the Court can effectively "separate the wheat from the chaff" with regard to claims asserted by pro se litigants.

### A. THIS COURT'S ORDER CIRCUMVENTS THE PROVISIONS OF THE PLRA THAT REQUIRE AN INMATE TO EXHAUST ALL AVAILABLE REMEDIES, AS IS MANDATED BY 42 U.S.C. § 1997e(a).

The first section of the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis added).  Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted all his administrative remedies.  In Woodford v. Ngo, ___ U.S. ___; 126 S. Ct. 2378, 2382 (2006), the Supreme Court held, "Exhaustion is no longer left to the discretion of the district court, but is mandatory."  See also Booth v. Churner, 532 U.S. 731, 739 (2001).  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards.").  As the Supreme Court stated in Jones v. Bock, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  127 S. Ct. at 918-19 (citing Porter v Nussle, 534 U.S. 516, 524) (emphasis added).

Here, Plaintiff has not exhausted the grievance procedures provided at the Randolph County Jail.  The Plaintiff has not only failed to file a grievance report, but he has never submitted an inmate request form for medical care.  (Ex. B, Johnson Decl. ¶ 20.)

As a result of Plaintiff's failure to exhaust the grievance procedure provided by the Randolph County Jail as to any of the claims he alleges in his Complaint, he is barred from bringing this action under § 1997e(a), see Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir.

1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies), including Plaintiff's claims for the denial of medical treatment.  See, e.g., Demouchet v. Antoon, 1999 WL 274507, *1 (5th Cir. 1999) (affirming the district court's dismissal of the plaintiff's civil rights complaint that alleged the denial of adequate medical care for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a)); Mayo v. Snyder, 166 Fed. Appx. 845, 847, (7th Cir. 2006) ("Exhaustion of administrative remedies is a prerequisite to bringing a § 1983 claim for denial of medical care.  See 42 U.S.C. § 1997e(a); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).  Inmates must follow a state's rules about the content of grievances.  Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002)."); Jarrett v. Norris, 12 Fed. Appx. 438, 439 (8th Cir. 2001) ("Arkansas inmate Jerry Jarrett appeals the District Court's [footnote omitted] dismissal without prejudice of his 42 U.S.C. § 1983 complaint for failure to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a) [].  The District Court did not err.  Although Jarrett submitted numerous grievances regarding his medical care, he did not present proof that he fully exhausted his administrative remedies as to all of the claims in his complaint.  See Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000) (per curiam); McAlphin v. Morgan, 216 F.3d 680, 682 (8th Cir. 2000) (per curiam); Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999).").

This Court's Order granting Plaintiff's Motion for Temporary Restraining Order, appointing him with an attorney, and awarding him attorney's fees to be taxed against Defendants circumvented the provisions of the PLRA that require the Plaintiff to exhaust all administrative remedies before he may bring an action under §1983.  In so doing, the Court effectively precluded Defendants from remedying any problems with Plaintiff's medical treatment on their own accord and under their own policies and procedures.  By circumventing

10

the provisions of the PLRA that require exhaustion of all administrative remedies, this Court's

Order has resulted in litigation expenses and court costs that otherwise would have been avoided

had Plaintiff been required to adhere to the exhaustion requirements of the PLRA.   Judicial

economy dictates that this Court vacate its Order as it is contrary to the provisions of the PLRA

requiring Plaintiff to exhaust all of his administrative remedies.

> **B.     THIS COURT'S ORDER CIRCUMVENTS THE PROVISIONS OF THE PLRA THAT PROHIBIT A COURT FROM GRANTING RELIEF UNDER §1983 "UNLESS A REPLY HAS BEEN FILED," AS IS MANDATED BY 42 U.S.C. § 1997e(g).**

Section 1997e(g)(1) provides:

> Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 of this title or any other Federal law.   Notwithstanding any other law or rule of procedure, such waiver shall not constitute an admission of the allegations contained in the complaint.   <u>No relief shall be granted to the plaintiff unless a reply has been filed</u>.

42 U.S.C. § 1997e(g)(1) (emphasis added).   Although neither the Eleventh Circuit nor the United

States Supreme Court has addressed the validity of an Order entered before a reply has been

filed, many United States District Courts in other jurisdictions have refused to grant a plaintiff

relief under § 1983 when a reply has not yet been filed.   <u>See</u> <u>Stevenson v. MDOC</u>, 2007 WL

1202310, *1 (W.D. Mich. 2007) ("Section 1997e(g) bars plaintiff from obtaining an entry of

default or a default judgment against any of the defendants, because defendants have no

obligation to reply to the complaint until ordered by the court.   <u>See, e.g.</u>, <u>Banks v. Percher</u>, No.

4:04-cv-764, 2006 WL 1878330 at *2 (M.D. Pa. July 6, 2006) ('even if we were to have

jurisdiction over defendant Fretz ... we could not enter a default judgment in favor of plaintiff

because 42 U.S.C. § 1997e(g)(1) requires a reply be filed in prison condition suits in order for

relief to be granted'); <u>Griffin v. Foti</u>, No. Civ. A 03-1274, 2003 WL 22836493 at *1 (E.D. La.

Nov.24, 2003) ('the Court notes that this civil action is subject to the Prison Litigation Reform Act of 1995, which provides that no relief shall be granted to a plaintiff until the defendant has filed a reply. 42 U.S.C. § 1997e(g)(1)'); Wallin v. Brill, 2007 WL 781566, *5 (D. Colo. 2007) ("In addition, as noted by Wederski, plaintiff is a prisoner confined in a correctional facility, and thus pursuant to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(g), a default judgment should not be entered in favor of the plaintiff as the Act requires that a reply be filed in prison conditions suits in order for relief to be granted. See, e.g., Lee v. Suthers, 50 Fed. Appx. 942 (10th Cir. 2002) (unpublished opinion); Banks, 2006 WL 1878330 (M.D. Pa. July 6, 2006); Griffin, 2003 WL 22836493 (E.D. La. Nov. 24, 2003).

Here, Defendants have had no opportunity to reply to Plaintiff's Complaint before the Court granted relief, because they weren't served with the Complaint until May 24, 2007, at the earliest, only one day before the Court entered its Order granting relief. This Court's Order granting Plaintiff's Motion for a Temporary Restraining Order and awarding him attorney's fees to be taxed against Defendants circumvented the provisions of the PLRA that prohibit the Court from granting relief until a reply has been filed.

**III.    THE COURT'S ORDER OF MAY 25, 2007, GRANTING A TEMPORARY RESTRAINING ORDER AGAINST DEFENDANTS IS IN DIRECT VIOLATION OF THE PROVISIONS SET FORTH IN 18 U.S.C. § 3626(a) OF THE PLRA THAT REQUIRE INJUNCTIVE RELIEF TO BE GRANTED ONLY WHERE SUCH RELIEF IS "NARROWLY DRAWN, EXTEND[ING] NO FURTHER THAN NECESSARY THAN TO CORRECT THE VIOLATION OF THE FEDERAL RIGHT."**

18 U.S.C. § 3626(a) provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

8 U.S.C.A. § 3626(a) (emphasis added).  In <u>Nichols v. Hopper</u>, 173 F.3d 820 (11th Cir. 1999), the Eleventh Circuit has held that before a court may enter prospective relief, it must make certain finds as required by § 3236(a). There, the Court held:

> The PLRA requires only that the relief be 'narrowly drawn,' go 'no further than necessary to correct the violation of the Federal right,' and 'be the least intrusive means necessary to correct the violation of the Federal right.'  18 U.S.C. §§ 3626(a)(1)(A), (b)(2), (b)(3).  Tailoring remedies to address the constitutional wrong is not an unusual practice.  Congress has the authority to <u>require a court in equity to make certain findings before issuing injunctive relief, see Gavin [v. Branstad</u>], 122 F.3d [1081] at 1087 [(8th Cir. 1997)], and previously has legislated restrictions on the manner in which courts may grant prospective relief. <u>See Missouri v. Jenkins</u>, 515 U.S. 70, 88 [] (1995) ('the nature of the ... remedy is to be determined by the nature and scope of the constitutional violation') (citation and internal quotation marks omitted); <u>Swann v. Charlotte-Mecklenburg Bd. of Educ.</u>, 402 U.S. 1, 16, [] (1971)").

173 F.3d at 824 (emphasis added).

### A.    THE COURT'S ORDER OF MAY 25, 2007, MAKES NO FINDINGS AS TO WHETHER THE INJUNCTIVE RELIEF GRANTED WAS "NARROWLY DRAWN."

In granting the Temporary Restraining Order, this Court's Order does not specify that "relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  In fact, the Court's Order makes no finding whatsoever as to the nature of the relief. The Order only states, "Plaintiff's motion for a temporary restraining order is GRANTED to the following extent" and proceeds to require that "Defendants shall immediately provide Plaintiff access to any prescribed medication for any seizure disorder suffered by Plaintiff;" and that "Defendants shall within 7 days of the date of this Order provide Plaintiff with consultation or examination by a physician or a physician's assistant regarding any complaints for which Plaintiff has requested medical treatment; the physician or physician's assistant

shall provide Plaintiff with any medically necessary treatment." Because the Court made no finding as to whether the relief granted in the Temporary Restraining Order was narrowly drawn and is the least intrusive means to correct a constitutional violation, the Order granting a Temporary Restraining Order is in direct violation of the congressional mandates of 18 U.S.C. 3626(a). This Court should take the opportunity to reconcile its Order with § 3626(a) and vacate the portion of that Order granting Plaintiff's Motion for a Temporary Restraining Order.

    **B.**    **THE COURT'S ORDER OF MAY 25, 2007, GRANTS PROSPECTIVE RELIEF WITHOUT MAKING A FINDING OF A CONSTITUTIONAL VIOLATION.**

Implicit in the mandates of 18 U.S.C. § 3626(a) is that the Court make a finding of a constitutional violation. Section 3626(a) requires the Court to make a finding that the granted "relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." The Court cannot make a determination as to whether the relief it grants is "extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right" unless it first makes a finding that there was, in fact, a constitutional violation. Here, the Court made no such finding in its Order. As a result, the Court's Order granting a Temporary Restraining Order is in direct violation with the mandates of § 3626(a). This Court should take the opportunity to reconcile its Order with § 3626(a) and vacate the portion of that Order granting Plaintiff's Motion for a Temporary Restraining Order.

IV.  **THE COURT'S ORDER OF MAY 25, 2007, PROSPECTIVELY AWARDING PLAINTIFF'S ATTORNEY'S FEES AND EXPENSES VIOLATES THE CONGRESSIONAL MANDATES OF THE PLRA, THE CONSTITUTIONAL MANDATES OF THE FIFTH AMENDMENT, AND THE PRINCIPLES OF QUALIFIED IMMUNITY.**

A.  **THIS COURT'S ORDER ABROGATES THE PROVISIONS OF THE PLRA GOVERNING THE AWARD OF ATTORNEYS FEES.**

1.  **The prospective award of attorney's fees is in direct violation of the provisions in 42 U.S.C.A. § 1997e(d) of the PLRA.**

The PLRA sets forth provisions that govern the award of attorneys fees, under 42 U.S.C. §1988 in prison litigation.  Section (d) of the PLRA provides:

> In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that --
>
>> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C.A. § 1997e(d) (emphasis added).  As the United States Supreme Court noted in Martin v. Hadix, 527 U.S. 343, 347 (1999), "Section 803(d)(3) of the Prison Litigation Reform Act of 1995 … [codified in 42 U.S.C. § 1997e(d)] places limits on the fees that may be awarded to attorneys who litigate prisoner lawsuits."   The Eleventh Circuit has noted that section (d) of the PLRA, much like section (a), is a mandatory provision binding upon the Court.  See Johnson v. Breeden, 280 F.3d 1308, 1326 (11th Cir. 2002) ("The district court correctly noted that § 1997e(d)(1)(A) required it to limit the amount of fees and expenses awarded to a prisoner under § 1988 to those that are 'directly and reasonably incurred in proving an actual violation of the plaintiff's rights.'").  By its plain language § 1997e(d) precludes a Court from entering an award

of attorney's fees unless the Court determines that the provision's prerequisites are satisfied.

     **a.**     **Neither Plaintiff nor his attorney proved an "actual violation of the plaintiff's rights."**

Plaintiff's Complaint merely alleged constitutional violations; it did not prove that Plaintiff's constitutional rights were violated. A jury is the proper arbiter of determining whether Plaintiff's constitutional rights were violated, not the Court. The Court made no determination in its Order that Plaintiff's constitutional rights had been violated. The PLRA, by its plain language, limits the Court's authority to award attorney's fees and expenses to those fees that were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." Without a finding of a violation of Plaintiff's rights, the Court is precluded from awarding attorney's fees and expenses under the PLRA. Because there was no finding of a violation of Plaintiff's constitutional rights, the Court did not have the authority to award attorney's fees.

     **b.**     **The attorney's fees awarded by the Court in its May 25, 2007, Order were not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights."**

The Court's Order clearly indicates that it was <u>not</u> awarding attorney's fees to Plaintiff for the attorney's fees and expenses "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." The Court's Order of May 25, 2007, stated, "For the purposes of Plaintiff's Motions for a temporary restraining order and a preliminary injunction, the Court appoints Kesa Johnston to represent Danny Lee Henderson at the cost of the Defendants." This award of attorney's fees is one of <u>prospective relief</u>, as in indicated in the fact that it was part of the Court's Order granting injunctive relief. The Order appointed Plaintiff's attorney and taxed against Defendants the <u>future</u> fees and expenses of that attorney in a single stroke of the pen. The PLRA does not provide for the taxing of attorney's fees and expenses as prospective relief,

as is evident in the plain language of § 1997e(d)(i).  Instead, the PLRA provides for the award of attorney's fees to compensate for fees and expenses <u>already accrued</u> – only where "actual violation of the plaintiff's rights" had been proven.  Furthermore, Plaintiff's attorney could not possibly have incurred any fees or expenses in "enforcing the relief ordered for violation," because Plaintiff's attorney was appointed in the same Order in which the Court granted relief.

The Court's Order awarding Plaintiff attorney's fees when neither Plaintiff nor his attorney had proved a violation of his constitutional rights and where the attorney's fees and expenses taxed against Defendants were not directly and reasonably incurred in the proving a violation of a constitutional right contravenes the provisions of the PLRA and undermines the policy set forth by Congress in the PLRA.  This Court should take the opportunity to reconcile its Order with the provisions of the PLRA that limit the Court's ability to award attorneys fees to those situations where a constitutional violation has been proven and the attorney's fees and expenses were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," a situation not here present.

> **2.    The prospective award of attorney's fees is in direct violation of the provisions in 18 U.S.C. § 3626(a) of the PLRA.**

As noted above, § 3626(a) of the PLRA prohibits the Court from granting "any prospective relief unless the court finds that such relief is <u>narrowly drawn</u>, <u>extends no further than necessary to correct the violation of the Federal right</u>, and is the least intrusive means necessary to correct the violation of the Federal right."  (emphasis added).  Here, the Court has not made any of the findings mandated by Congress in the provisions of § 3626(a) of the PLRA with regard to the granting of injunctive relief <u>or</u> the awarding of Plaintiff's attorney's fees and expenses.  The award of attorney's fees and expenses, as noted above, is prospective relief, and therefore, it falls under the purview of § 3626(a) of the PLRA.  Accordingly, the Court's Order of

May 25, 2007, awarding Plaintiff's attorney's fees and expenses is in direct conflict with the congressional mandates of § 3626(a) of the PLRA that require the Court to make a finding that the prospective "relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  This Court should take the opportunity to reconcile its Order with the provisions of the PLRA that limit the Court's ability to award attorneys fees to those situations where a constitutional violation has been proven and the attorney's fees and expenses were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," a situation not here present.

   **B.    THIS COURT'S ORDER OF MAY 25, 2007, VIOLATES DEFENDANTS' FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW BY AWARDING PLAINTIFF ATTORNEY'S FEES WITHOUT PROVIDING DEFENDANTS AN OPPORTUNITY TO OPPOSE THE AWARD OF ATTORNEY'S FEES.**

   This Court's award of attorney's fees and expenses in its May 25, 2007, Order necessarily implicates the Due Process Clause of the Fifth Amendment.  As the Eleventh Circuit noted in Bank Atlantic v. Blythe Eastman Paine Webber, Inc.,12 F.3d 1045, 1050 (11th Cir. 1994), "The district court's award of reasonable costs and attorney's fees pursuant to Rule 37 implicates the Due Process Clause of the Fifth Amendment."  There is no practical difference in the implication of the Due Process Clause of the Fifth Amendment when the Court awards attorney's fees and expenses under the PLRA instead of Rule 37, Fed. R. Civ. P. As the Supreme Court stated in Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980), "Like other sanctions, attorney's fees should not be assessed lightly or without fair notice and an opportunity for a hearing on the record."  Under the mandates of the Fifth Amendment, Defendants are entitled to an opportunity to be heard and to defend against Plaintiff's

allegations before any attorney's can be awarded.  See, e.g., Aetna Ins. Co. v. Hartshorn, 477 F.2d 97, 100 (5th Cir. 1973) ("The Due Process clause of the Fifth Amendment shields the individual against arbitrary exercise of governmental power by its guarantee that fundamental principles of justice and fair play not be violated.  Two such fundamental principles, or minimal requirements, are adequate notice and opportunity to be heard or to defend.").  Defendants had neither notice of the May 23, 2007, hearing, nor an opportunity to be heard or defend against Plaintiff's allegations before the Court entered its Order of May 25, 2007.  Accordingly, the Court's Order taxing Plaintiff's attorney's fees and expenses against Defendants violates their Due Process rights under the Fifth Amendment.  This Court should take the opportunity to reconcile its Order with the provisions of the Fifth Amendment that provide Defendants the right to due process of law when a Court taxes attorney's fees and expenses against them.

### C.    THE COURT'S ORDER AWARDING PLAINTIFF ATTORNEY'S FEES AND EXPENSES, TO BE TAXED AGAINST DEFENDANTS VIOLATES PRINCIPLES OF QUALIFIED IMMUNITY.

This Court's Order awarding attorney's fees and expenses to be taxed against Defendants abrogates Defendants right to assert the defense of qualified immunity.  In D'Aguanno v. Gallagher, 50 F.3d 877 (11th Cir. 1995), the Eleventh Circuit held that attorney's fees fall within the damages which a qualified immunity defense would bar.  There, the Court stated, "We hold that, for qualified immunity purposes, the term 'damages' includes costs, expenses of litigation, and attorneys' fees claimed by a plaintiff against a defendant in the defendant's personal or individual capacity."  D'Aguanno, 50 F.3d at 881.  This case is certainly one in which Defendants would assert qualified immunity in addition to absolute immunity.  The qualified immunity defense is an affirmative defense that a defendant is entitled to assert prior to a Court

enters a judgment against that defendant, whether a judgment as a matter of law or a judgment rendered by a jury after a trial on the merits of the plaintiff's claims. See Cottrell v. Caldwell, 85 F.3d 1480, 1487 (11th Cir. 1996) ("In cases where defendants are entitled to qualified immunity, it is imperative that they receive the benefits of that defense prior to trial .... That imperative results from the nature of the entitlement to qualified immunity. 'The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' Mitchell v. Forsyth, 472 U.S. [511] at 526[] [(1985)]; accord Behrens [v. Pelletier], 516 U.S. [299] at [308], [(1996)] ('Harlow [v. Fitzgerald, 457 U.S. 800[] (1982) ] and Mitchell make clear that the defense is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery....' (internal quotation marks omitted)); Johnson [v. Jones], 515 U.S. [304] at [316] [] (the very policy militating in favor of immediate appeals from the denial of qualified immunity motions is to protect public officials from lawsuits); Anderson v. Creighton, 483 U.S. 635, 646 n.6 [] (1987) (Because '[o]ne of the purposes of the Harlow qualified immunity standard is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government"... we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation.'); Ansley v. Heinrich, 925 F.2d 1339, 1346-47 (11th Cir.1991).").

In its Order of May 25, 2007, this Court granted attorneys fees and expenses against Defendants without providing them an opportunity to assert their qualified immunity defense. Furthermore, the Court never conducted a qualified immunity analysis in its Order granting an award of attorney's fees and expenses.[5]  As a result, the Court's Order of May 23, 2007,

---

[5] In D'Aguanno, the Court noted another procedural mechanism with which the Court must comply when entering an award of attorney's fees in a case involving the defense of qualified immunity, a procedural mechanism that

awarding Plaintiff attorney's fees and expenses to be taxed against Defendants extinguishes their right to assert the qualified immunity defense to Plaintiff's claims. This Court should take this opportunity to reconcile its Order with the principles qualified immunity.

## V.   THE COURT SHOULD VACATE ITS ORDER OF MAY 25, 2007, BECAUSE THE BASIS FOR THAT ORDER WAS FACTUALLY FLAWED.

### A.   THE FACTUAL BASIS FOR THE COURT'S ENTRY OF A TEMPORARY RESTRAINING ORDER WAS FACTUALLY FLAWED.

The Court's Order entered a Temporary Restraining Order against Defendants to enjoin them to (1) "immediately provide Plaintiff access to any prescribed medication for any seizure disorder suffered by Plaintiff" and to (2) "provide Plaintiff with consultation or examination by a physician or a physician's assistant regarding any complaints for which Plaintiff has requested medical treatment; the physician or physician's assistant shall provide Plaintiff any necessary medical treatment." The factual bases upon which the Court relied in entering this Temporary Restraining Order was (1) that Plaintiff has epilepsy and was denied his anti-convulsant medication, and (2) that Plaintiff was denied medical treatment for his epilepsy. These two bases are, upon which the Court relied in granting its Temporary Restraining Order, are factually flawed.

### 1.   There is no medical evidence that Plaintiff has been diagnosed as an epileptic and has prescriptions for anti-convulsant medication.

When seen by the Nurse Practitioner at the Wedowee Hospital E.R. on May 23, 2007, Plaintiff did not complain of having epilepsy, nor did he mention having any problems with an epileptic condition to the Nurse Practitioner. (Exhibit D, Declaration of Jim Gunnels, "Gunnels Decl.," ¶ 5.) The Plaintiff's chief complaint when he was taken to the Wedowee Hospital E.R. was that he was experiencing "sharp pains to the left side of his chest," not that he was suffering from an

---

reinforces the policy considerations behind the qualified immunity defense: "[I]n cases involving the qualified immunity defense, no court should award fees or costs against a defendant in his individual capacity without first making clear with particularity the unreasonable conduct during the litigation that supports the award." 50 F.3d at

epilepsy condition.  (Ex. D, Gunnels Decl. ¶¶ 4, 5.)  Plaintiff was diagnosed with high blood pressure and hypertension.  (Ex. D, Gunnels Decl. ¶ 8.)  Furthermore, Plaintiff has no prescription for any anti-convulsant medication, so Jim Gunnels could not provide him such medication as provided by this Court's Order.  (Ex. D, Gunnels Decl. ¶ 5.)  In fact, after he filed his Complaint, Plaintiff had been prescribed and was receiving HCTZ, a medication for hypertension, Ultram, a medication for pain relief, and Naprosyn, an anti-inflammatory drug used to relieve pain and swelling.  (Ex. D, Gunnels Decl. ¶ 8.)  Accordingly, the factual basis relied upon by the Court in granting its Temporary Restraining Order, that Plaintiff is an Epileptic and was denied his medication, is factually flawed.  The Court should take the opportunity to conform its Order with the factual circumstances in this case.

### 2.    Plaintiff never requested Medical Treatment.

The Randolph County Jail has established procedures for providing inmates medical attention.  (Ex. C, Davidson Decl. ¶¶ 6, 11; Ex. B, Johnson Decl. ¶ 8.)  Prior to filing his Complaint, Plaintiff had never requested medical treatment from any physician or physician's assistant.  (Ex. B, Johnson Decl. ¶ 8.)  However, as the record indicates, when Plaintiff requested medical attention, it was provided to him.  (Ex. C, Davidson Decl. ¶ 12; Ex. B, Johnson Decl. ¶ 14.)  Accordingly, the factual basis relied upon by the Court in granting its Temporary Restraining Order, that Plaintiff was denied medical treatment for his epilepsy, is factually flawed.  The Court should take the opportunity to conform its Order with the factual circumstances in this case.

### B.    THE FACTUAL BASIS FOR THE COURT'S AWARD OF PLAINTIFF'S ATTORNEY'S FEES AND EXPENSES, TO BE TAXED AGAINST DEFENDANTS, WAS FACTUALLY FLAWED.

The Court's Order entered an award of attorney's fees and expenses to be taxed against Defendants.  As indicated in footnote 1 of the Order, this award of attorney's fees and expenses

---

881 n.7 (emphasis original).  Here, the Court failed to comply with this procedural mechanism.

without providing notice to Defendants was based on the presumption that "the nonmoving parties have notice" of the proceedings, and that it "held a telephonic status conference with counsel for both parties regarding this case."

    1.    **Defendants had no notice of the May 23, 2007, proceedings upon which the Court based its Order.**

As noted above, Defendants had <u>no notice whatsoever</u> of the proceedings upon which the Court based its Order. (Ex. A, Fuller Decl. ¶ 19.) Defendants first received notice of Plaintiff's Complaint on May 24, 2007 at the earliest, <u>only one day after the Court held its</u> <u>"status conference" on the Motions for a Temporary Restraining Order and a Preliminary</u> <u>Injunction</u>. (Ex. B, Johnson Decl. ¶ 14.) The Court entered its Order on May 25, 2007. The factual bases relied upon by the Court in granting its award of attorney's fees and expenses, that Defendants had notice of the May 23, 2007, proceedings, is factually flawed. The Court should take the opportunity to conform its Order with the factual circumstances in this case.

    2.    **Defendants had no representation at the May 23, 2007, proceedings upon which the Court based its Order.**

Attorney Kesa Johnston was present at the status conference on behalf of Plaintiff and John Tinney, the Randolph County Attorney, on behalf of the County Commission. There was no attorney present to represent Defendants Fuller, Johnson, and Davidson. (Ex. A, Fuller Decl. ¶ 18.) John Tinney is not the attorney of record for Defendants, nor has he ever represented Defendants in prior litigation. (Ex. A, Fuller Decl. ¶¶ 16, 17; Ex. B, Johnson Decl. ¶¶ 16, 17; Ex. C, Davidson Decl. ¶¶ 17, 19.) When Defendants first received notice of Plaintiff's Complaint, Defendants contacted their attorneys, the undersigned counsel of record. The factual bases relied upon by the Court in granting its award of attorney's fees and expenses, that

Defendants were represented by counsel at the May 23, 2007 proceedings, is factually flawed.  The Court should take the opportunity to conform its Order with the factual circumstances in this case.

## CONCLUSION

Based upon the foregoing, Defendants Jeffrey Fuller, Shirley Johnson, and Craig Davidson request that this Court grant their Vacate and Terminate the Court's Order dated May 25, 2007, entering a Temporary Restraining Order and awarding Plaintiff his attorney's fee's and expenses to be taxed against Defendants.

Respectfully submitted this 5th day of June, 2007.

> **s/Kendrick E. Webb**
> KENDRICK E. WEBB, Bar No. WEB022
> C. RICHARD HILL, JR. Bar No. HIL045
> ATTORNEY FOR DEFENDANTS JEFFREY FULLER, SHIRLEY JOHNSON, AND CRAIG DAVIDSON
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  kwebb@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 5th day of June, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send notification to the following CM/ECF participants:  **Kesa M. Johnston, Esq. and Jay Lewis, Esq.**

> **s/Kendrick E. Webb**
> OF COUNSEL

# Exhibit A
# Declaration of Jeffery Fuller

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANNY LEE HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:07-cv-452-MEF-WC** |
| | ) | |
| **LATHONIA J. WRIGHT,** | ) | |
| **COMMISSIONER, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION UNDER PENALTY OF PERJURY**
**OF JEFFERY FULLER[1]**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF RANDLOLPH** | ) |

1.      My name is Jeff Fuller.  I am over the age of nineteen and am competent to execute this declaration.  The statements made in this declaration are based on my personal knowledge.  I am the duly elected Sheriff of Randolph County, Alabama and have been since January 1995.

2.      I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Jail.

3.      Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County.  He was extradited from Georgia, where the U.S. Marshal Fugitive Task Force had caught him.

---

[1] See 28 U.S.C. § 1746.

4.    I have never denied necessary medical care or treatment to an inmate, nor have I ever authorized or allowed anyone to do so.

5.    It is the policy of the Randolph County Jail to place a new inmate on a list for a physical and a health screening. Mr. Henderson was placed on the list for a physical and a health screening, but because the Nurse Practitioner that previously had performed medical examinations for the inmates stopped coming to the jail without notice to me or my staff, Mr. Henderson did not receive an immediate health screening and physical.

6.    It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner.

7.    Never have I received any grievance from Mr. Henderson complaining about any aspect of his incarceration; specifically, never has Mr. Henderson complained to me about any problems of a medical nature. As there is a grievance procedure in the Randolph County Jail, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration. However, I never received any such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning any matters. Therefore, Mr. Henderson has not complied with the grievance procedures of the Randolph County Jail.

8.    Mr. Henderson has never filled out a medical request form. Mr. Henderson has never complained about his medical condition since he has been in the Randolph County Jail.

Moreover, Mr. Henderson has never complained about anything since he has been in the Randolph County Jail.

9.      To my knowledge, Mr. Henderson never submitted an inmate request form, a grievance, or any request for medical care, except for one oral request for medical care on Thursday, May 31, 2007.

10.     John Tinney called me on May 23, 2007, to inform me of a verbal Order issued by the Court at a "status conference." During this conversation, I learned that the Court was ordering me and my staff to take Mr. Henderson to the Emergency Room for medical treatment. Two days later, on May 25, 2007, I was served with Mr. Henderson's Complaint by mail.

11.     Mr. Henderson never reported having a seizure while at the Randolph County Jail until after he filed his Complaint. I never witnessed Mr. Henderson have a seizure while at the Randolph County Jail, nor did any employee at the Jail inform me that he had a seizure. If Mr. Henderson had a seizure while at Randolph County Jail, I am certain that I would have heard about it.

12.     To this day, Mr. Henderson has not been prescribed any anti-convulsant medication for an epilepsy condition by any medical professional to my knowledge.

13.     I am not personally familiar with the allegations made the basis of Mr. Henderson's Complaint as Mr. Henderson has never made any complaint to me specifically, either verbally or written.

14.     I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive Mr. Henderson of any right to which he was entitled.

15.     I have never denied an inmate necessary medical care or treatment, nor have I authorized or allowed anyone to do so.

16.    John Tinney, the County Attorney has never represented me in my official capacity, and to my knowledge, he has never represented any jail official in any lawsuit since I have been working at the Randolph County Jail.

17.    I have never had any contact with John Tinney with regard to any lawsuit that involved me or the Randolph County Jail.

18.    I learned that on May 23, 2007, the Court held a telephonic "status conference" regarding this case. At that "status conference," Kesa Johnston represented Mr. Henderson, and John Tinney represented the County Commission. There was no attorney present to represent me and my staff. I never authorized John Tinney to represent me or any of my employees in this matter.

19.    I received no prior notice of this "status conference," and I had no knowledge of it until John Tinney called me on May 23, 2007.

20.    Webb & Eley has always represented me and my employees at the jail in any prison litigation involving us.

21.    I appointed Shirley Johnson as my Jail Administrator to handle the day-to-day operation and supervision of the detention facility.

22.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _5 th_ day of June, 2007

JEFFERY FULLER

# Exhibit B
# Declaration of Shirley Johnson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| DANNY LEE HENDERSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) |
| LATHONIA J. WRIGHT, | ) |
| COMMISSIONER, et al. | ) |
| | ) |
|     Defendants. | ) |

### DECLARATION UNDER PENALTY OF PERJURY
### OF SHIRLEY JOHNSON[1]

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RANDOLPH | ) |

1.    My name is Shirley Johnson. I am over the age of nineteen and am competent to execute this declaration. The statements made in this declaration are based on my personal knowledge.

2.    I am the Jail Administrator of the Randolph County, Alabama Detention Facility, and have served as Jail Administrator since 1999. I began my employment with the Randolph County Sheriff's Department in 1989 as a matron. I am a graduate of Jail Management School.

3.    I am aware of the standards required by state and federal law for providing inmates incarcerated in Alabama jails with medical care. I have had input into making decisions regarding the policies and procedures of the Randolph County Sheriff's Department for providing inmates in Randolph County with medical care, and have been actively involved in the

---

[1] See 28 U.S.C. § 1746.

day to day provision of medical care to inmates during the entire time I have worked in the corrections field.

4.    I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Detention Facility.

5.    Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County. He was extradited from Georgia, where the U.S. Marshall Fugitive Task Force had caught him.

6.    Because Mr. Henderson was using an alias while in Georgia, when he was transported from Georgia to the Randolph County Jail, his transport sheet was not marked at all with any notation of his medical condition, and I could not determine whether he had any prescriptions for medications or whether he was currently taking any medications.

7.    It is the policy of the Randolph County Jail to not administer medication to an inmate until that inmate has received a health-screening and a physical from a doctor.

8.    It is the policy of the Randolph County Jail that to see a doctor, an inmate must fill out a medical request form. Mr. Henderson has never filled out a medical request form. Mr. Henderson has never complained about his medical condition since he has been in the Randolph County Jail. Moreover, Mr. Henderson has never complained about anything since he has been in the Randolph County Jail.

9.    It is the policy of the Randolph County Jail to place a new inmate on a list for a physical and a health screening. The Nurse Practitioner at the Wedowee Clinic will usually call the jail once or twice a week to get a list of the inmates needing medical attention on the following day.

2

10.    Mr. Henderson had previously been admitted to the Randolph County Jail on May 11, 2001, and November 6, 2004. Mr. Henderson was placed on the list for a physical and a health screening, but because the Nurse Practitioner that previously had performed medical examinations for the inmates stopped coming to the jail without notice to me or my staff, Mr. Henderson did not receive an immediate health screening and physical.

11.    It is the policy of the Randolph County Jail to fax weekly a refill list for the medications prescribed to our inmates. Because Mr. Henderson did not come into the Randolph County Jail with any prescriptions for any medications, and because I could not determine if Mr. Henderson had any medications prescribed to him, Lieutenant Krista Traylor did not put any medications on the refill list for him.

12.    It is the policy of the Randolph County Jail to contact the Wedowee Clinic for permission to administer any medication that a new inmate was carrying when he was arrested. We are not licensed medical professionals and are unable to administer any medications to our inmates without permission from a medical professional. To my knowledge, Mr. Henderson was not carrying any medications when he was arrested.

13.    If an inmate needs medical care for emergency needs, that inmate is transported by car or ambulance to the Wedowee Hospital. Once that inmate is discharged, I ensure that any and all care instructions are followed to the best of our ability.

14.    On May 23, 2007, Sgt. Vernon Haynes took Mr. Henderson to the Wedowee Hospital, because we found out that the Court had ordered him to receive immediate medical treatment. On May 24, 2007, I received service of Mr. Henderson's Complaint by certified mail.

15.    On June 4, 2007, I accompanied Captain Craig Davidson and Jailer Ronnie Smith, to take Mr. Henderson a medical release form to sign, so that we could access his medical

3

records to determine if and when he was diagnosed with epilepsy, as well as what anti-convulsant medications, if any, he had previously been prescribed. Mr. Henderson refused to sign the release until he had spoken with his attorney, because he claims to have received medical attention under an assumed name.

16.    John Tinney, the County Attorney has never represented me in my official capacity, and to my knowledge, he has never represented any jail official in any law suit since I have been working at the Randolph County Jail.

17.    I have never had any contact with John Tinney with regard to any lawsuit that involved me or the Randolph County Jail.

18.    Webb & Eley has always represented the jail and its employees in any prison litigation naming us as defendants.

19.    Internal grievance procedures at the Randolph County, Alabama Detention Facility are available to all inmates. It is the policy of the Randolph County, Alabama Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have. It is further the policy and procedure of the Randolph County, Alabama Detention Facility to place each such grievance in the inmate's file for a record of the same.

20.    Mr. Henderson has not complied with the grievance procedures of the Randolph County, Alabama Detention Facility. I have never received any grievance from Mr. Henderson concerning any of the allegations made the basis of his Complaint. As there is a grievance procedure in the Randolph County Detention Facility, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration. I never received any

such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning these matters. Had any request form or grievance been submitted by Mr. Henderson, it would have been placed in his inmate file per Detention Facility policy. However, Mr. Henderson's inmate file is devoid of any such grievance.

21.    I have complied with all policies and procedures of the Randolph County, Alabama Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

22.    I certify and state that the documents from Mr. Henderson's Inmate File and from the General Jail Records provided to the Court which are attached to the Defendants' Motion to Alter Amend or Vacate and Brief in Support are true and correct copies of these records, kept at the Randolph County Detention Facility in the regular course of business. I am the Custodian of these Records.

23.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __5__ day of June, 2007

SHIRLEY JOHNSON

6

# Exhibit C
# Declaration of Craig Davidson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| DANNY LEE HENDERSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) |
| LATHONIA J. WRIGHT, | ) |
| COMMISSIONER, et al. | ) |
| | ) |
|     Defendants. | ) |

## DECLARATION UNDER PENALTY OF PERJURY
## OF CRAIG DAVIDSON[1]

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RANDOLPH | ) |

1.     My name is Craig Davidson. I am over the age of nineteen and am competent to execute this declaration. The statements made in this Declaration are based on my personal knowledge. I am the Assistant Jail Administrator of the Randolph County, Alabama, Jail. I have served the Randolph County Sheriff's Department for three years as a Captain. Before that I served as a Sergeant at the Chambers County Sheriff's Department for three years and as a jailer for two months. I am a graduate of Jail Management School.

2.     I am aware of the standards required by state and federal law for providing inmates incarcerated in Alabama jails with medical care. I have had input into making decisions regarding the policies and procedures of the Randolph County Sheriff's Department for providing inmates in Randolph County with medical care, and have been actively involved in the day to day provision of medical care to inmates during the entire time I have worked in the corrections field.

---

[1] See 28 U.S.C. § 1746.

3.     I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Detention Facility.

4.     Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County.  He was extradited from Georgia, where the U.S. Marshal Fugitive Task Force had caught him.

5.     I have never denied necessary medical care or treatment to an inmate, nor have I ever authorized or allowed anyone to do so.

6.     It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request.  A request may be submitted via a written request form or made verbally to a correctional officer.  The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail.  Inmates can also be seen, at least weekly, by the jail Nurse Practitioner.

7.     Mr. Henderson has neither filed either an inmate request form seeking medical care nor a grievance complaining about any aspect of his incarceration (including medical care); specifically, Mr. Henderson has never complained to me about any problems of a medical nature.  As there is a grievance procedure in the Randolph County Jail, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration.

8.     Internal grievance procedures at the Randolph County, Alabama Detention Facility are available to all inmates.  It is the policy of the Randolph County, Alabama Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have.  It is further the policy and

2

procedure of the Randolph County, Alabama Detention Facility to place each such grievance in the inmate's file for a record of the same.

9.     Mr. Henderson has not complied with the grievance procedures of the Randolph County, Alabama Detention Facility. I have never received any grievance from Mr. Henderson concerning any of the allegations made the basis of his Complaint. As there is a grievance procedure in the Randolph County Detention Facility, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration. I never received any such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning these matters. Had any request form or grievance been submitted by Mr. Henderson, it would have been placed in his inmate file per Detention Facility policy. However, Mr. Henderson's inmate file is devoid of any such grievance.

10.     Mr. Henderson has never complained about his medical condition since he has been in the Randolph County Jail.

11.     If an inmate needs medical care for emergency needs, that inmate is transported by car or ambulance to the Wedowee Hospital. Once that inmate is discharged, the staff is to ensure that any and all care instructions are followed to the best of our ability. Mr. Henderson never complained of any emergency medical needs, so he was never taken to the Wedowee Hospital for emergency treatment.

12.     On May 23, 2007, Sheriff Fuller ordered me to take Mr. Henderson to the Wedowee Hospital, because the Court had ordered that he receive immediate medical treatment. I ordered Sgt. Haynes to take Mr. Henderson to the Wedowee Hospital. To my knowledge, Mr. Henderson was taken to the Wedowee Hospital that day.

13.     Upon learning of Mr. Henderson's alleged epilepsy condition, after Mr. Henderson filed his Complaint, I asked him about his condition. He told me that he was last seen

3

by a doctor for the condition three or four years ago in Heflin, Alabama. He also told me that he had not taken any epilepsy medication in four or five months.

14.    Mr. Henderson never reported having a seizure while at the Randolph County Jail until after he filed his Complaint. After he had filed his Complaint, Mr. Henderson told me that he had the seizure two weeks earlier.

15.    I never witnessed Mr. Henderson have a seizure while at the Randolph County Jail, nor did any employee at the Jail inform me that he had a seizure. If Mr. Henderson had a seizure while at Randolph County Jail, I would have heard about it.

16.    On June 4, 2007, I, along with Jail Administrator Shirley Johnson, and Jailer Ronnie Smith, took Mr. Henderson a medical release form to sign, so that we could access his medical records to determine if and when he was diagnosed with epilepsy, as well as what anti-convulsant medications, if any, he had previously been prescribed. Mr. Henderson refused to sign the release until he had spoken with his attorney, because he claims to have received medical attention under an assumed name.

17.    John Tinney, the County Attorney has never represented me in any capacity, and to my knowledge, he has never represented any jail official in any lawsuit involving the Jail since I have been working at the Randolph County Jail, nor did he ever represent me in an official capacity while I work in Chambers County.

18.    Mr. Henderson's attorney, Kesa Johnston represents me in a child custody dispute.

19.    I have never had any contact with John Tinney with regard to any lawsuit that involved me in any capacity or the Randolph County Jail.

20.    Webb & Eley has always represented the jail and its employees in any prison litigation naming us as defendants.

4

21.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _5<u>th</u>_ day of June, 2007

CRAIG DAVIDSON

# Exhibit D
# Declaration of Jim Gunnels

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) | |
| LATHONIA J. WRIGHT, | ) | |
| COMMISSIONER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION UNDER PENALTY OF PERJURY
## OF JAMES ERIC GUNNELS[1]

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF MONTGOMERY | ) |

1.      My name is James Eric Gunnels.  I am over the age of nineteen and am competent to execute this declaration.  The statements made in this Declaration are based on my personal knowledge, training and experience.

2.      I am a licensed nurse practitioner.  I have been certified by the Alabama Board of Nursing.  I practice at the Wedowee Hospital and the Wedowee Clinic.  I also visit the Randolph County Jail to perform health screenings and physicals on the inmates there.

3.      I have seen Danny Lee Henderson, twice.  The first time I saw him was in the Wedowee Hospital Emergency Room on May 23, 2007.

4.      Mr. Henderson's major complaint on May 23, 2007 was sharp pains to the left side of his chest.

5.      During our conversation at the Wedowee ER, Mr. Henderson told me that he had

bullet fragments in his left arm and shoulder from an old gunshot wound. Mr. Henderson told me that he had a history of high blood pressure, and had been diagnosed with plexis-muscle syndrome, a condition caused by the bullet fragments putting pressure on the nerves in his arm and shoulder. To my knowledge, Mr. Henderson never mentioned any condition of epilepsy, nor did he mention to me that he took any anti-convulsant medication. He did not have a prescription for any anti-convulsant medication that I know of.

6.    A full cardiac work-up was done on Mr. Henderson. There were no significant changes in his EKG, to my memory. There was nothing abnormal in Mr. Henderson's lab work to my recollection or memory.

7.    I determined that Mr. Henderson had high blood pressure, and hypertension. The "chest pain" Mr. Henderson was experiencing, I determined, was the result of an old gunshot wound in his left shoulder and arm. Mr. Henderson was not in any acute distress that required admission to the hospital.

8.    At this May 23, 2007 examination, Mr. Henderson was prescribed HCTZ, a medication for hypertension, Ultram, a medication for pain relief, and Naprosyn, an anti-inflammatory drug used to relieve pain and swelling.

9.    The second time I examined Mr. Henderson was at the Jail Wednesday, May 30, 2007, at the request of Mr. Henderson.

10.    To the best of my memory and knowledge, Mr. Henderson did not mention he had a seizure at the Randolph County Jail. He did list of history of seizures on the ER Nursing Triage Sheet on his visit to the Wedowee Hospital ER. He did not mention to me on my visit to the Jail on May 30, 2007 that he had had a seizure.

---

[1] See 28 U.S.C. § 1746.

2

11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the __5__ day of June, 2007

JAMES ERIC GUNNELS

3