## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| DANNY LEE HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) |
| LATHONIA J. WRIGHT, | ) |
| COMMISSIONER, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS JEFFERY FULLER AND SHIRLEY JOHNSON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Jeffery Fuller, Randolph County Sheriff, and Shirley Johnson, Randolph County Jail Administrator, sued in their individual and official capacities, and submit this brief in support of their Motion to Dismiss or, in the alterative, Motion for Summary Judgment, filed simultaneously herewith.

## INTRODUCTION

On May 21, 2007, Plaintiff filed a pro se Complaint naming Lathonia J. Wright, all Randolph County Commissioners, Sheriff Jeffery Fuller, Jail Administrator Shirley Johnson, and Captain Craig Davidson as Defendants.[1]  On May, 21, 2007, the Court construed Plaintiff's Complaint to include Motions for a Temporary Restraining Order and a Preliminary Injunction. On May 25, 2007, this Court entered an Order granting the Motion for a Temporary Restraining

---

[1]  The Magistrate Judge recommended Defendants Lathonia J. Wright, and "All Randolph County Commissioners" be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) and (iii) prior to service. (Doc. 5.)  See Turquitt v. Jefferson County, Alabama, 137 F.3d 1285, 1289 (11th Cir. 1998) (County commissioners cannot be held liable for actions undertaken during the daily operation of a county jail); Woods v. Gamel, 132 F.3d 1417, 1420 (11th Cir. 1998) ("The budgetary decisions made by defendants for funding the county – including the jail – are legislative acts protected by legislative immunity.").  In its Order of June 12, 2007, this Court adopted the Magistrate Judge's findings and dismissed Randolph County and the Randolph County Commissioners with prejudice.  (Doc. 22.)

Order, appointing Kesa M. Johnston as counsel for Plaintiff, and awarding her fees and expenses to be taxed against Defendants. On June 5, 2007, counsel for Defendants Fuller, Johnson, and Davidson filed a Motion to Vacate and Terminate the Court's May 25, 2007, Order. On June 6, 2007, the Court held another status conference with Plaintiff's counsel, counsel for Defendants, and John Tinney. On June 8, 2007, this Court entered an order vacating the Temporary Restraining Order it entered on May 25, 2007, which included a requirement for Defendants to pay Plaintiff's attorney's fees. The Court's June 8, 2007, Order required Plaintiff's counsel to submit a request for attorney's fees on or before June 11, 2007. On June 11, 2007, Plaintiff filed an Application for Award of Attorney's Fees and Costs and an Amended Complaint. On June 15, 2007, counsel for Defendants filed an Opposition to Plaintiff's Application for Award of Attorney's Fees.

## NARRATIVE STATEMENT OF UNDISPUTED FACTS

Plaintiff was admitted to the Randolph County Jail on April 21, 2007, and is awaiting trial for the murder of a man in Randolph County. He was extradited from Georgia, where the U.S. Marshal Fugitive Task Force had caught him. (Exhibit A, Declaration of Jeffery Fuller, "Fuller Decl.," ¶ 3.) Because Plaintiff was using an alias while in Georgia, when he was transported from Georgia to the Randolph County Jail, his transport sheet was not marked at all with any notation of his medical condition, and it was unclear whether he had any prescriptions for medications or whether he was currently taking any medications. (Exhibit B, Declaration of Shirley Johnson, "Johnson Decl.," ¶ 6.) Plaintiff was placed on the list for a physical and a health screening, pursuant to jail policy, but because the Nurse Practitioner that previously had performed medical examinations for the inmates stopped coming to the jail without notice to the jail staff, Plaintiff did not receive an immediate health screening and

physical. He was, however, on the inmate screening list and had been scheduled for a health screening at the time the Court entered the Temporary Restraining Order, and arrangements had been made for the Nurse Practitioner from the Cleburne County Jail to see Mr. Henderson. (Ex. B, Johnson Decl., ¶ 10.)

On May 23, 2007, Plaintiff was taken to the Wedowee Hospital for immediate medical treatment. (Ex. B, Johnson Decl., ¶ 14; Exhibit C, Declaration of Craig Davidson, "Davidson Decl.," ¶ 12.). During his visit to the Wedowee E.R., Plaintiff complained not of an epileptic condition, but of "sharp pains to the left side of his chest." (See Exhibit D to Defendants' 06/05/07 Motion to Vacate and Terminate, Declaration of James Eric Gunnels, "Gunnels Decl.," ¶ 4.) At no point during his examination at the Wedowee E.R. did Plaintiff complain of an epileptic condition, nor did he mention that he took any anti-convulsant medication. (Ex. D, Gunnels Decl., ¶ 5.) The Nurse Practitioner who saw Plaintiff during his E.R. visit on May 23, 2007, did not prescribe Plaintiff any anti-convulsant medication. (Ex. D, Gunnels Decl., ¶ 8.) Plaintiff never complained of having a seizure during his visit to the Wedowee Hospital. (Ex. D, Gunnels Decl., ¶ 10.)

It is the policy of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner. (Ex. A, Fuller Decl., ¶ 6.) Plaintiff never filed an inmate request for medical attention. (Ex. A, Fuller Decl., ¶¶ 7-8; Ex. B, Johnson Decl., ¶ 8.)

Plaintiff never reported having a seizure while at the Randolph County Jail until after he filed his Complaint.  (Ex. A, Fuller Decl., ¶ 10; Ex. C, Davidson Decl., ¶ 14.)

It is the policy of the Randolph County, Alabama Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have.  It is further the policy and procedure of the Randolph County, Alabama Detention Facility to place each such grievance in the inmate's file for a record of the same.  (Ex. B, Johnson Decl., ¶ 16.)  Plaintiff has not filed any grievance concerning any of the allegations made the basis of his Complaint.  (Ex. A, Fuller Decl., ¶ 7; Ex. B, Johnson Decl., ¶ 17.)

## ARGUMENT

Plaintiff's Amended Complaint contains three counts and alleges constitutional law and, potentially, state law claims against Defendants.  In Counts II and V of the Amended Complaint, Plaintiff alleges that Defendants failed to provide Plaintiff with medical care "after being made aware that Plaintiff needed medical care."  (Doc. 18, ¶¶ 64, 102.)  In Courts II and VI, Plaintiff alleges that Defendants have subjected Plaintiff to inhumane conditions and treatment.  (Doc. 18, ¶¶ 88, 121.)  In Counts IV and VII, Plaintiff alleges that Defendants "refus[ed] [Plaintiff] access to reading materials other than religious texts and [has] compel[ed] [Plaintiff] and other inmates to attend prayer services."  (Doc. 18, 94; see also Doc 18 ¶ 142.)  Based on the foregoing allegations, Plaintiff demands relief in the following forms: injunctive relief to require Defendants to provide "proper medical treatment, sanitary conditions and safe and minimally comfortable conditions to Plaintiff;" a declaratory judgment declaring unconstitutional the alleged policies and practices stated in the Amended Complaint; that Plaintiff is awarded

compensatory damages; punitive damages; reasonable attorneys' fees; and, that Plaintiff receives any other relief deemed fair and equitable.  (Doc. 18, ¶¶ 159(a-f).)

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (affirming district court's grant of 12(b)(6) dismissal).  "Pleadings must be something more than an ingenious academic exercise in the conceivable."  Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc).  In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6).  Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss").  Even taking all of the Plaintiff's allegations as true, his claims against this Defendant are due to be dismissed based on the grounds set out below.

## I.  PLAINTIFF'S FAILURE TO COMPLY WITH THE PROVISIONS OF THE PRISON LITIGATION REFORM ACT ("PLRA") PRECLUDES THIS COURT FROM GRANTING ANY RELIEF ON PLAINTIFF'S AMENDED COMPLAINT.

The Court's adherence to mandates of the Prison Litigation Reform Act ("PLRA") is essential to ensure that the "flood" of frivolous claims for constitutional violations does not burden and hinder the Court's consideration of legitimate claims presented by inmate litigants.  See Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) ("In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ('PLRA').").  As the Supreme Court recently noted in Jones v. Bock:

Prisoner litigation continues to "account for an outsized share of filings" in federal district courts. <u>Woodford v. Ngo</u>, 548 U.S. ----, ----, n. 4, 126 S. Ct. 2378 (2006) (slip op., at 12, n. 4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. [footnote omitted] Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit. <u>See</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 [] (1989).

Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524, [] (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. **<u>Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.</u>**

127 S. Ct. at 914 (emphasis added). Uniform adherence to all the provisions of the PLRA, especially the grievance exhaustion requirement, is mandatory for both inmate litigants and the Courts to ensure that the Court can effectively "separate the wheat from the chaff" with regard to claims asserted by inmate litigants.

### A.    PLAINTIFF HAS FAILED TO EXHAUST ALL AVAILABLE REMEDIES, AS IS MANDATED BY 42 U.S.C. § 1997e(a).

The first section of the PLRA provides:

<u>No action shall be brought</u> with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C. § 1997e(a) (emphasis added). Under this provision of the PLRA, an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983, and the Court is precluded from granting relief to any plaintiff who has not exhausted <u>all</u> his administrative remedies. In <u>Woodford v. Ngo</u>, ___ U.S. ___; 126 S. Ct. 2378, 2382 (2006), the Supreme Court held, "Exhaustion is no longer left to the discretion of the district court, but is

mandatory." <u>See also</u> <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."). As the Supreme Court stated in <u>Jones v. Bock</u>, "There is no question that <u>exhaustion is mandatory</u> under the PLRA and that unexhausted claims cannot be brought in court." 127 S. Ct. at 918-19 (citing <u>Porter v Nussle</u>, 534 U.S. 516, 524) (emphasis added).

1.    **Plaintiff has not availed himself of the remedies provided by the Randolph County Jail grievance policy.**

Here, Plaintiff has not exhausted the grievance procedures provided at the Randolph County Jail. The Plaintiff has not only failed to file a grievance report, but he has never submitted an inmate request form for medical care. (Ex. B, Johnson Decl. ¶ 17.) In his Amended Complaint, Plaintiff concedes that he has failed to comply with the provisions of the PLRA that require him to exhaust all available state law remedies before filing this action under § 1983.

As a result of Plaintiff's failure to exhaust the grievance procedure provided by the Randolph County Jail as to any of the claims he alleges in his Complaint, he is barred from bringing this action under § 1997e(a), <u>see</u> <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies), including Plaintiff's claims for the denial of medical treatment. <u>See, e.g.</u>, <u>Demouchet v. Antoon</u>, 1999 WL 274507, *1 (5th Cir. 1999) (affirming the district court's dismissal of the plaintiff's civil rights complaint that alleged the denial of adequate medical care for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a)); <u>Mayo v. Snyder</u>, 166 Fed. App'x 845, 847, (7th Cir. 2006) (unpublished opinion) ("Exhaustion of administrative remedies is a prerequisite to bringing a § 1983 claim for denial of medical care. <u>See</u> 42 U.S.C. § 1997e(a); <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). Inmates must follow a state's rules

about the content of grievances.  <u>Strong v. David</u>, 297 F.3d 646, 649 (7th Cir. 2002).”); <u>Jarrett v.</u>

<u>Norris</u>, 12 Fed. App’x 438, 439 (8th Cir. 2001) (unpublished opinion) (“Arkansas inmate Jerry

Jarrett appeals the District Court’s [footnote omitted] dismissal without prejudice of his 42

U.S.C. § 1983 complaint for failure to exhaust his administrative remedies as required under 42

U.S.C. § 1997e(a) [].   The District Court did not err.   Although Jarrett submitted numerous

grievances regarding his medical care, he did not present proof that he fully exhausted his

administrative remedies as to all of the claims in his complaint.  <u>See</u> <u>Graves v. Norris</u>, 218 F.3d

884, 885 (8th Cir. 2000) (per curiam); <u>McAlphin v. Morgan</u>, 216 F.3d 680, 682 (8th Cir. 2000)

(per curiam); <u>Hartsfield v. Vidor</u>, 199 F.3d 305, 309 (6th Cir. 1999).”).  Plaintiff has clearly

failed to comply with the Randolph County Jail grievance policy, as is mandated by the PLRA as

a prerequisite to any action brought by an inmate under § 1983.

**2.     Plaintiff cannot circumvent the exhaustion requirements of the PLRA with a theory of constructive exhaustion of remedies.**

Plaintiff attempts to carve out an exception to the PLRA’s exhaustion requirement.  He

argues that because he did not know about the Randolph County Jail grievance policy, he should

be deemed to have exhausted all the remedies available to him. At least eight times in his

Amended Complaint, Plaintiff states that he

> “has never been informed of the jail’s grievance policy nor has he been made aware that there is a grievance policy. Therefore [Plaintiff] has been rendered unable to exhaust any administrative remedies due to Fuller’s and Johnson’s failure to provide access to such remedies so [Plaintiff] must be deemed to have exhausted the remedies available to him.”

(Doc. 18, ¶¶ 38, 58, 79, 100, 119, 140, 157.)   However, for various reasons, Plaintiff’s

constructive exhaustion argument does not exempt him from the prerequisites of the PLRA.

**a.      Plaintiff had actual knowledge of the Randolph County Jail grievance policy.**

Contrary to his contentions in his Amended Complaint, Plaintiff was not ignorant of the Randolph County Jail Grievance Policy prior to filing his initial pro se Complaint.  In fact, on May 17, 2007, <u>four days prior to filing his Complaint</u>, Plaintiff filed an Inmate Request Form, which is provided in accordance with the Randolph County Jail grievance policy (Ex. A, Fuller Decl. ¶¶ 16, 17; Ex. B, Johnson Decl. ¶¶ 16, 17), to request that a jail official complete a certificate stating the amount of money in his inmate account, so Plaintiff could proceed with his *pro se* Complaint against Defendants in forma pauperis.   (Ex. C, Davidson Decl. ¶ 7.) Apparently, Plaintiff was not so ignorant of jail grievance policy that he was unable to utilize it in pursuing this action against Defendants.  Accordingly, this Court should take judicial notice of the undisputed facts in the record that Plaintiff was well aware of the Randolph County Jail grievance policy prior to his filing this action.

**b.      Plaintiff cannot place the burden of exhausting all available administrative remedies on Defendants.**

Even if Plaintiff was ignorant of the jail grievance policy, Plaintiff's constructive exhaustion argument cannot circumvent the mandatory requirements of the PLRA. Plaintiff attempts to place the burden of exhaustion on Defendants by arguing that they failed to inform him of the Jail's grievance policy.   In <u>Jones v. Bock</u>, the Supreme Court recognized that the burden of exhaustion falls on the inmate, not on the jail staff: "to properly exhaust administrative remedies <u>prisoners must 'complete the administrative review process in accordance with the applicable procedural rules</u>,' [<u>Woodford v. Ngo</u>,] 548 U.S., [___] at ___, [] 126 S. Ct. 2328 [(2006)] (slip op., at 5) -- rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by

the PLRA to 'properly exhaust.'" <u>Jones</u>, 127 S. Ct. at 922-23 (emphasis added).  Therefore, the burden to ensure that Plaintiff complied with the Randolph County Jail grievance policy so as to satisfy the exhaustion requirements of the PLRA fall on Plaintiff, not Defendants.

> **c.    Federal courts have consistently rejected similar "constructive exhaustion" arguments as a means to satisfy the exhaustion requirements of the PLRA.**

Furthermore, an inmate's purported ignorance of a jail grievance policy cannot excuse his burden to exhaust all administrative remedies under the PLRA.  <u>See</u> <u>Evans v. Marshall</u>, ___ F. Supp. 2d ___, 2007 WL 842056, *5 (S.D. Ga. 2007) ("[I]n the instant case, Plaintiff's alleged ignorance of the grievance policy at the Jail does not excuse him from the PLRA's exhaustion requirement.  <u>See, e.g.</u>, <u>Hatch v. Burke County Jail</u>, Civil Case No. 106-080 (S.D. Ga. Aug. 18, 2006) (taking judicial notice of available administrative remedies at Burke County Jail, based on record in previous case, and rejecting inmate plaintiff's claim that he had no notice of grievance procedure); <u>Thomas v. Federal Bureau of Prisons</u>, ___ F. Supp. 2d ___, 2006 WL 3861962, *2 (W.D. La. 2006) ("Thomas pursued only the first of several steps in the administrative remedy process.  His alleged ignorance is not an excuse as no exceptions have been read into § 1997e(a).  As he failed to exhaust all administrative remedies with regard to his claims against the USP Pollock employees, Thomas' complaint should be dismissed."); <u>Walker v. Woodford</u>, 454 F. Supp. 2d 1007, 1026 (S.D. Cal. 2006) ("Plaintiff Hurd may also be arguing that he exhausted his grievances by filing a request for medical treatment in January 2005 related to physical symptoms allegedly caused by the lighting.  [citation omitted]  This argument fails because there can be no 'constructive' exhaustion under the PLRA; the inmate must exhaust the prison's administrative grievance process, and cannot simply raise his complaint with prison officials through some other means."); <u>Mukatin v. Hesseltine</u>, ___ F. Supp. 2d ___, 2006 WL 2468758,

*2 (E.D. Cal. 2006) ("Plaintiff's citation to Balistreri [v. Pacifica Police Dep't., 901 F.2d 601, 609 (9th Cir. 1990)] for the proposition that the court must overlook his ignorance of the exhaustion requirement and deny defendants' motion is inapt.  First, the exhaustion requirement set forth in section 1997e(a) is not a technical procedural requirement such as that discussed in Balistreri, which addressed the argument that a pro se litigant had waived her appeal by failing to comply with formal brief writing requirements.  Balistreri, 901 F.2d at 698-99.  Second, even if Balistreri had been applicable, it was decided prior to the enactment of section 1997e(a) and prior to the decision issued by the Ninth Circuit in McKinney [v. Carey, 311 F.3d 1198 (9th Cir. 2002) (applying for the first time the provisions of 42 U.S.C. § 1997e(a) to dismiss a case for failure to comply with the exhaustion requirements of the PLRA)], and would therefore not be controlling."); Vega v. U.S. Dept. of Justice, ___ F. Supp. 2d ___, 2005 WL 2931841, *9 (M.D. Pa. 2005) ("Vega's ignorance of the PLRA's exhaustion requirements does not relieve Vega of his obligation to properly exhaust the available administrative remedies.  See Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999) (a petitioner's 'misunderstanding' of appellate rights is not 'cause' for procedural default); Tackman v. Goord, ___ F. Supp. 2d ___, 2005 WL 2347111, *31 (W.D.N.Y. 2005) ("Tackman may not sidestep the PLRA's broad exhaustion requirements to avoid summary judgment by raising his asserted ignorance of the law, or Directive 4040 and his available grievance procedures."); Langford v. Couch 50 F. Supp. 2d 544, 550-51 (E.D. Va. 1999) ("Absent any allegations or evidence that he was prevented from complying with ... grievance procedures, plaintiff cannot avoid or evade § 1997e(a)'s exhaustion requirement.").

Because Plaintiff has failed to exhaust all administrative remedies available to him, this action is precluded by the provisions of the PLRA that require an inmate to exhaust all

administrative remedies as a prerequisite to bringing an action under § 1983. Because Plaintiff's claims in his Amended Complaint are barred by the PLRA, they must be dismissed.

## II.    SHERIFF FULLER AND JAIL ADMINISTRATOR JOHNSON ARE ENTITLED TO DISMISSAL OF THE PLAINTIFF'S § 1983 CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES.

Randolph County Sheriff Jeffery Fuller and Randolph County Jail Administrator Shirley Johnson are entitled to Eleventh Amendment immunity to all Plaintiff's claims against them in their official capacities. Moreover, these Defendants, in their official capacities, are not persons for purposes of 42 U.S.C. § 1983.

### A.    THE PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AGAINST SHERIFF FULLER AND ADMINISTRATOR JOHNSON ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

The Plaintiff's official capacity § 1983 claims are due to be dismissed for lack of subject matter jurisdiction. By virtue of their positions, Sheriff Fuller is an executive officer of the State of Alabama. See article V, § 112 of the Alabama Constitution of 1901; McMillian v. Monroe County, 520 U.S. 781 (1997) (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties). Because Sheriff Fuller is an extension of the State of Alabama, Jail Administrator Johnson, also a law enforcement officer, is an officer and agent of the State. See Beherns v. Pelletier, 116 S. Ct. 834 (1996); see also Lassiter v. Alabama A&M University, 28 F.3d 1146 (11th Cir. 1994) (en banc). Because Sheriff Fuller's employees in the Randolph County Jail are State agents, they, too, are entitled to absolute immunity when sued in their official capacities. See Carr v. City of Florence, 916 F. 2d 1521, 1525-26 (11th Cir. 1990) (holding that Alabama deputy sheriffs are legally extensions of their sheriffs and are likewise considered officers of the State of Alabama); see also, Manders v. Lee, 338 F.3d 1304, 1315 (11th Cir. 2003) ("To receive Eleventh Amendment immunity, a defendant need not be labeled a

'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State.").  Therefore, a suit against these particular Defendants in their official capacities is a suit against the State of Alabama.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Lancaster v. Monroe County, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  Because this action is, in effect, a suit against the State of Alabama, the Plaintiff's claims under § 1983 are barred by the Eleventh Amendment to the United States Constitution.  Thus, this Court lacks subject matter jurisdiction over Plaintiff's official capacity claims.

**B.    SHERIFF FULLER AND ADMINISTRATOR JOHNSON, IN THEIR OFFICIAL CAPACITIES, ARE NOT PERSONS FOR PURPOSES OF 42 U.S.C. § 1983.**

Section 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Thus, Plaintiff's official capacity claims against these Defendants are due to be dismissed because they are not persons under § 1983.  See also Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").  Therefore, any claims against the Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Will, 491 U.S. at 71; Carr, 916 F.2d at 1525 n.3.

III.    **SHERIFF FULLER AND ADMINISTRATOR JOHNSON ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S § 1983 CLAIMS AGAINST THEM IN THEIR INDIVIDUAL CAPACITIES.**

The Plaintiff has failed to state a claim against Sheriff Fuller and Administrator Johnson in their individual capacities for three reasons.    First, the Plaintiff's Complaint fails to meet the heightened pleading requirement for § 1983 cases involving qualified immunity.    Second, even if the Plaintiff's Complaint could be construed as meeting the heightened pleading requirement, Sheriff Fuller and Administrator Johnson are entitled to qualified immunity.    Finally, the Plaintiff has not alleged a valid supervisory claim against Sheriff Fuller or Administrator Johnson.

A.    **PLAINTIFF'S AMENDED COMPLAINT FAILS TO MEET THE ELEVENTH CIRCUIT'S HEIGHTENED PLEADING REQUIREMENT FOR CASES INVOLVING QUALIFIED IMMUNITY.**

The Plaintiff's individual capacity claims against Sheriff Fuller and Administrator Johnson are due to be dismissed because Plaintiff's Amended Complaint, on its face, does not meet the Eleventh Circuit's pleading standard for § 1983 cases involving qualified immunity.    A plaintiff's pleading standard is "heightened" when claims are made against government officials in their individual capacities.    See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998) ("Accordingly, when reviewing a district court's disposition of a motion to dismiss a § 1983 claim on qualified immunity grounds, we are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.").    The Plaintiff's Complaint contains little more than conclusory allegations that cannot survive a motion to dismiss.    See Aquatherm Indus., Inc. v. Fla. Power & Light Co., 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and approving the district court's reasoning that "vague, conclusory allegations are insufficient to state a claim upon which relief can be granted").

The Eleventh Circuit pointed out in GJR Inv., Inc. v. County of Escambia, that:

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992) (citing Arnold v. Bd. of Educ., 880 F.2d 305, 309 (11th Cir. 1989)).  Some factual detail is necessary to the adjudication of § 1983 claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

132 F.3d at 1367.

The Eleventh Circuit has continued to apply a higher pleading standard for § 1983 cases involving qualified immunity.  See, e.g. Dukes v. Miami-Dade County, ___ F.3d ___, 2007 WL 1373176, *2 (11th Cir. 2007) ("This circuit, however, imposes a heightened pleading requirement in section 1983 claims and plaintiffs cannot rely on 'vague or conclusory' allegations.").  In Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003), the Eleventh Circuit made clear that a higher pleading standard applies when qualified immunity is raised:

> In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity.  GJR Inv., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  The complaint must allege the relevant facts "with some specificity."  Id.  '[M]ore than mere conclusory notice pleading is required…. [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory'.  Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).  See also Veney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995) (holding that complaint must 'include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity').  Moreover, in reviewing a motion to dismiss, we need only accept 'well-pleaded facts' and 'reasonable inferences drawn from those facts'.  Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992).  '[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal'.  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

325 F.3d at 1235.  As Gonzalez demonstrates, a higher standard of pleading is alive and well in Eleventh Circuit qualified immunity jurisprudence.

Plaintiff has sprinkled numerous legal conclusions throughout his Amended Complaint while providing little or no factual allegations in support.  For purposes of the heightened pleading standard, Plaintiff is required to plead facts within his knowledge and control that bear on the question of qualified immunity.  See Williams v. Ala. State Univ., 865 F. Supp. 789, 799 (M.D. Ala. 1994) (rev'd on other grounds 102 F.3d 1179 (11th Cir. 1997)).  Because Plaintiff has failed to allege with any degree of particularity or specificity the acts or omissions of Defendants Fuller and/or Johnson directly affecting Plaintiff, and has left out crucial facts within his possession that factor heavily into these Defendants' entitlement to qualified immunity, the Complaint is due to be dismissed.  Mitchell, 472 U.S. at 528.

It is clear from the face of the Amended Complaint that Sheriff Fuller and Administrator Johnson were acting within their discretionary authority as Sheriff and Jail Administrator during all times relevant to Plaintiff's Complaint because all actions complained of in the Complaint are law enforcement activities, and law enforcement activities are "a legitimate job-related function" of a Sheriff and Deputy Sheriff.  See, e.g., Holloman ex rel Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004).  As the Supreme Court and the Eleventh Circuit have recognized, official conduct is generally accorded a presumption of legitimacy.  Gonzalez, 325 F.3d at 1235 ("We must also keep in mind the fact that '[w]e generally accord ... official conduct a presumption of legitimacy.'") (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991).

**B.    SHERIFF FULLER AND ADMINISTRATOR JOHNSON ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE NOTHING IN THEIR CONDUCT CROSSED A "BRIGHT LINE" CONTOUR OF CLEARLY ESTABLISHED CONSTITUTIONAL LAW.**

Even if Plaintiff's Amended Complaint could be construed as conforming to the Eleventh Circuit's pleading requirements, it demonstrates, on its face, that Sheriff Fuller and Administrator Johnson are entitled to qualified immunity.  Once a defendant has asserted the defense of qualified

immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if Plaintiff has adequately stated a constitutional violation in his Amended Complaint, whether that constitutional right was "clearly established" to the degree that Sheriff Fuller and/or Administrator Johnson had "fair warning" that their conduct violated Plaintiff's constitutional rights. Id.

It is appropriate to decide the question of qualified immunity at the motion to dismiss stage. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003); Gonzalez, 325 F.3d at 1233; St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). "Unless the Plaintiff's allegations state a claim of violation of clearly established law, a Defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." See Mitchell, 472 U.S. at 526 (emphasis added). The burden is on the Plaintiff to show that these Defendants violated clearly established law. Id. As the Eleventh Circuit has held:

> Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases. The most common error we encounter, as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of abstract 'rights.'

Lassiter v. Alabama A&M Univ. Bd. of Trustees, 28 F.3d 1146, 1149-50 (11th Cir. 1994) (en banc). Plaintiff cannot point to any clearly established law that demonstrates that these Defendants violated Plaintiff's constitutional rights.

### 1.    Plaintiff cannot show a violation of his federally protected rights.

Plaintiff's Amended Complaint fails to meet Plaintiff's burden of showing that Defendants violated Plaintiff's constitutional rights. See Saucier, 533 U.S. at 201. The

Plaintiff's burden arises after an initial showing that the Defendants were acting within their discretionary authority. The Eleventh Circuit has stated that the discretionary authority hurdle is a low one to clear. See e.g., Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). A government official may show that he acted within the scope of his discretionary authority by showing that (1) the actions taken were pursuant to the performance of his duties; and (2) said actions were within the scope of his authority. Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988). It is apparent from the face of the Amended Complaint that the only involvement these Defendants had with the Plaintiff was in the capacity of sheriff or jail administrator.

> **a.    Plaintiff cannot demonstrate that either Sheriff Fuller or Administrator Johnson was deliberately indifferent to any reasonably serious medical condition that Plaintiff made known to them.**

Plaintiff has offered no facts in his Amended Complaint to support a claim against the Defendants for their failure to provide Plaintiff proper medical care. In his Amended Complaint, Plaintiff alleges that Defendants failed to provide Plaintiff with medical care "after being made aware that Plaintiff needed medical care." (Doc. 18, ¶¶ 64, 102.) Plaintiff further alleges that he only received medical care on May 25, 2007, after this Court entered its Temporary Restraining Order. (Doc. 18, ¶¶ 66, 104.) In fact, Plaintiff was taken to the Wedowee Hospital on May 23, 2007, two days prior to this Court's Order. (Ex. B, Johnson Decl., ¶ 14; Ex. C, Davidson, ¶ 12.)

In order to prevail under 42 U.S.C. § 1983 on this claim, Plaintiff must demonstrate that the Defendants were deliberately indifferent to a "serious" medical condition, such that the Defendants' conduct constitutes an Eighth Amendment violation.[2]  See Hudson v. McMillian,

---

[2]    Plaintiff is a pretrial detainee, so his claims for denial of medical treatment and for the conditions of his confinement are not governed by the Eighth Amendment, but by the Fourteenth Amendment. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the

503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'") (citing Estelle v. Gamble, 429 U.S. 97, 103-104 (1976)).  In Estelle, the Supreme Court stated:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105-06 (emphasis added).  See also, Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, Plaintiff has not shown that he had a serious medical condition.  In fact, Plaintiff never once complained to Sheriff Fuller or Administrator Johnson about his medical condition.  (Ex. B, Johnson Decl., ¶¶ 8, 17; Ex. A, Fuller Decl. ¶ 7.)  Plaintiff never filed an inmate request form seeking medical treatment of any kind, nor did he file a grievance form complaining about any purported denial of medical care.  (Ex. B, Johnson Decl., ¶ 8; Ex. C, Davidson Decl., ¶¶ 7, 10.)  When Plaintiff initially was extradited from Georgia to the Randolph County Jail, there was no notation on the transport sheet of any medical condition or prescribed medication, because Plaintiff was using an alias while in Georgia.  (Ex. B, Johnson Decl., ¶ 6.)

---

applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.").

Although Plaintiff claims in his Amended Complaint to have had a seizure, (Doc. 18, ¶ 20), Plaintiff never informed Defendants that he had a seizure. (Ex. A, Fuller Decl., ¶ 10; Ex. C, Davidson Decl., ¶ 14.) After Plaintiff filed his action alleging denial of medical treatment for his epilepsy condition, Defendants learned of his purported medical condition and took Plaintiff to the Wedowee Emergency Room for immediate medical treatment. (Ex. B, Johnson Decl., ¶ 14; Ex. C, Davidson Decl., ¶ 12.) During his visit to the Wedowee E.R., Plaintiff complained not of an epileptic condition, but of "sharp pains to the left side of his chest." (Ex. D, Gunnels Decl., ¶ 4.) In fact, at no point during his examination at the Wedowee E.R. did Plaintiff complain of an epileptic condition, nor did he mention that he took any anti-convulsant medication. (Ex. D, Gunnels Decl., ¶ 5.) Jim Gunnels, the Nurse Practitioner who saw Plaintiff during his E.R. visit on May 23, 2007, did not prescribe Plaintiff any anti-convulsant medication. (Ex. D, Gunnels Decl., ¶ 8.) Plaintiff never told the Jim Gunnels that he had a seizure. (Ex. D, Gunnels Decl., ¶ 10.) It is clear from the record that Plaintiff never complained of a serious medical condition.

Plaintiff further alleges in his Amended Complaint that, despite having provided Plaintiff medical treatment, Defendants have "fail[ed] to provide <u>adequate</u> medical care to Plaintiff." (Doc. 18, ¶¶ 65, 103.) An inmate does not have a right to a <u>specific</u> kind of treatment. <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; <u>how [a municipality] obtains such treatment is not a federal constitutional question</u>.") (emphasis added). Additionally, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated Plaintiff. <u>See</u> <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567,

1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, Defendants do not have any kind of medical education, training or experience.  They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  In Williams v. Limestone County, 198 Fed. App'x 893 (11th Cir. 2006), the Eleventh Circuit had addressed in an unpublished opinion the issue of whether an inmate may maintain a medical claim under the auspices of § 1983 against prison officials with no medical background.  In Williams, the Eleventh Circuit held that a Sheriff was not liable for failure to train his employees in emergency medical procedures.  In so holding, the Court noted:

> [W]e cannot say, on this record, that "the need for more or different training [was] obvious," such that by failing to ensure jail personnel were trained in emergency medical procedures, Sheriff Blakely disregarded a substantial risk that the jail staff would be deliberately indifferent to inmates' medical needs ….
>
> [T]here is no indication from the record that Sheriff Blakely had notice his policies, training procedures, or supervision were "likely to result in the violation of a constitutional right." ….
>
> [S]upervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care.  See, e.g., Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir.1988).  In this case, Sheriff Blakely promulgated general procedures for dealing with emergency situations, which procedures relied primarily on the medical expertise Naphcare was obligated by contract to provide ….  "[D]eliberate indifference is a stringent standard of fault, requiring proof that [the] actor disregarded a known or obvious consequence of his action."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391, [] (1997).  See also Adams v. Poag, 61 F.3d 1537,

> 1543 (11th Cir. 1995).  Williams [the plaintiff], as the district court concluded,
> thus failed to meet his burden on summary judgment of establishing that Sheriff
> Blakely's failure to train jail personnel amounted to deliberate indifference to
> Williams' serious medical condition.

198 Fed. App'x at 897-898.

The Eighth Circuit has also addressed whether a Sheriff's employees may be held liable

for claims of deliberate indifference to a medical condition when medical treatment is provided.

In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison

doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air

pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's

denial of summary judgment for the director, the Eighth Circuit began by making some common

sense observations.  "A prison's medical treatment director who lacks medical expertise cannot

be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 citing, Camberos v.

Branstad, 73 F.3d 174, 176 (8th Cir. 1995).  Further, the Meloy court stated "[p]rison officials

cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer

v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to
> second-guess or disregard a treating physician's treatment decision.  Because the
> law was not clearly established that [the director] was deliberately indifferent to
> [the plaintiff's] serious medical needs, [the director] is entitled to qualified
> immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff never complained to Defendants

about his medical condition or medical treatment, nor did he make them aware that he had a

serious condition that needed treatment.  The record further demonstrates that once Defendants

were made aware of Plaintiff's purported medical condition, they supplied him with immediate

---

[3] The medical director was a trained and licensed nurse.  302 F.3d at 846.

treatment.  The medical professional who treated Plaintiff did not treat his purported epilepsy condition, because Plaintiff did not make him aware of the condition.  The Defendants, who are not trained and licensed medical providers, are in no way responsible for second-guessing the judgments of this medical professional and cannot be held responsible for delivering treatment for a condition of which they are not aware and for which the medical professional has provided no diagnosis.  Therefore, Plaintiff has failed to allege facts sufficient to find that Defendants denied him proper medical treatment.  Because he has failed to state a valid claim against Defendants for denial of medical care, those claims must be dismissed.

> **b.** **Plaintiff cannot demonstrate that either Sheriff Fuller or Administrator Johnson imposed any inhumane conditions or inhumane treatment upon Plaintiff during his confinement.**

Plaintiff has offered no facts in his Amended Complaint to support a claim against Defendants for subjecting Plaintiff to inhumane conditions and treatment in violation of the Fourteenth Amendment.  The Constitution does not mandate comfortable prisons. As the Supreme Court recognized in <u>Bell v. Wolfish</u>, 441 U.S. 520, 537 (U.S. 1979):

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however … And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

441 U.S. at 537.  <u>See also</u>, <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981).  Jail officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-527 (1984).  "The Constitution does not require that prisoners be provided any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration."  <u>Newman v. Alabama</u>, 559 F.2d 283, 291 (5th Cir. 1977), <u>rev'd in part on other grounds</u>, 438 U.S. 781

(1978).[4]   Only where the conditions complained of result in "unquestioned and serious deprivation of basic human needs" do they rise to a constitutional violation.  Rhodes, 452 U.S. at 347.  A claim is stated only where the conditions of confinement (including failure to protect claims) pose a serious risk to the health or safety of an inmate and the defendant official is deliberately indifferent to that risk.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

To establish a violation of his right to be free from inhumane conditions or treatment, Plaintiff is required to show that Defendants "intentionally imposed the restriction for a punitive purpose."  Wilson v. Blankenship, 163 F.3d 1284, 1291-92 (11th Cir. 1998) (citing Bell v. Wolfish, 441 U.S. 520, 539 (1979)).  To establish that a confinement restriction is punitive in nature, Plaintiff must show that the restriction "'is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless,'" in which case, "'a court may infer that the purpose of the government action is punishment.'"  Wilson, 163 F.3d at 1292 (quoting Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir. 1984)).

Here, Plaintiff alleges in merely a conclusory manner that Sheriff Fuller "is deliberately indifferent to the horrid conditions of Plaintiff's incarceration and the substantial risk of serious harm," and that Sheriff Fuller "has been made aware of the safety hazards, lack of exercise, improper nutrition, denial of access to legal materials and lawyers and failure of jail staff to protected inmates from others with communicable diseases.[5]"  (Doc. 18, ¶ 88.)  Plaintiff alleges that Defendant Johnson, through her deliberate indifference, has "fail[ed] to provide safe, minimally comfortable, clean and sanitary accommodations" (Doc. 18, ¶ 121.); that Defendant Johnson, through her deliberate indifference, has "expos[ed] [Plaintiff] to safety hazards

---

[4]  See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (decisions of the Fifth Circuit handed down before close of business on September 30, 1981 are binding precedent on the Eleventh Circuit).

[5]  Plaintiff has failed to allege in his Amended Complaint that he has been exposed to a communicable disease from another inmate.  Instead, Plaintiff merely states, "Many inmates have staph infections and others have been rumored to have AIDS and hepatitis."  (Doc 18, ¶ 32.)

including raw electrical wiring, improperly functioning or nonexistent fire alarms, smoke alarms and sprinklers, and improper supervision of inmates and failure to segregate violent inmates[6]" (Doc. 18, ¶ 122.); that Defendant Johnson has, through her deliberate indifference, "fail[ed] to provide sanitary accommodations including properly functioning showers and toilets, proper lighting, running water, clean eating utensils and proper handling of food" (Doc. 18, ¶ 123.); that Defendant Johnson has, through her deliberate indifference, "fail[ed] to provide [Plaintiff] with a nutritionally adequate diet[7]" (Doc. 18, ¶ 124.); that Defendant Johnson has, through her deliberate indifference, "fail[ed] to protect [Plaintiff] against exposure from other inmates with communicable diseases[8]" (Doc. 18, ¶ 125.); that Defendant Johnson has, through her deliberate indifference, "refus[ed] to allow Plaintiff access to legal materials so that he could properly style and draft his pro se complaint[9]" (Doc. 18, ¶ 126.); and that Defendant Johnson has been "deliberately indifferent to an extreme limitation of exercise by only thirty minutes outside each week in a small, insufficient area[10]"(Doc. 18, ¶ 125.).

As noted above, Plaintiff's failure to adequately plead facts and information within his knowledge and control that bear on the issue whether Sheriff Fuller or Administrator Johnson is entitled to qualified immunity renders the task of responding to such allegations nearly impossible. However, as the Supreme Court acknowledged in Bell v. Wolfish, supra, Plaintiff is

---

[6] Plaintiff has failed to allege in his Amended Complaint that he has been a victim of inmate violence. Rather, Plaintiff's inmate file reveals that he has victimized other inmates. (Exhibit D, Randolph County Jail Inmate Request Form, 5/16/07, ¶ 1.) (wherein, inmate Alan Dudley complains that Plaintiff and inmate Johnny McComb "have a problem with being locked up [and] like to throw rasaill sluer [racial slurs,] beat on the bunk and make fun of those that can['] t read and write very well.").

[7] Plaintiff fails to allege in his Amended Complaint that he is suffering from any kind of malnutrition or dietary deficiencies.

[8] As noted in footnote 4, supra, Plaintiff has failed to allege in his Amended Complaint that he has been exposed to a communicable disease from another inmate.

[9] Plaintiff fails to allege in his Amended Complaint that his pro se Complaint was procedurally deficient in any way as a result of his inability to access legal materials. In fact, two days after filing his pro se Complaint, the Court held a status conference on it, and two days later, the Court issued an Order that entered a Temporary Restraining Order and appointed counsel for Plaintiff.

[10] Plaintiff fails to allege in his Amended Complaint that Defendant Johnson acted in any way to limit Plaintiff's ability to exercise.

not entitled to "live as comfortably as possible." 441 U.S. at 537. Here, Plaintiff has alleged no facts in his Amended Complaint that indicate that Sheriff Fuller of Administrator Johnson deprived Plaintiff of adequate food, clothing, shelter, and medical care. Plaintiff claims that he has been deprived the use of a new eating utensil at every meal and must clean and reuse the same utensil at each meal. (Doc. 18, ¶ 30.) Certainly, this does not amount to an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.

Although Plaintiff claims that his meals are "nutritionally inadequate and are improperly served" (Doc. 18, ¶ 31.), he provides no factual allegations that support this conclusion. Neither the record, nor the Amended Complaint, indicate that Plaintiff has been trained as a nutritionist, and even assuming *arguendo* that his food has been improperly served, Plaintiff has failed to allege facts to support the conclusion that improper service of food renders that food so inadequate as to amount to an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.

With regard to Plaintiff's allegations that Sheriff Fuller and Administrator Johnson have failed to protect him from other inmates with communicable diseases, his suspicions of the diseases other inmates are "rumored to have" are merely conclusory and unfounded. As noted above, mere conclusory suspicions cannot amount to an allegation of constitutional violation. See Marsh, 268 F.3d at 1036 n.16 See also Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir.1974). Furthermore, it is jail policy to place to require a new inmate to get a physical and a health screening upon arrival at the jail. That inmate then sees a medical professional from the Wedowee Clinic and receives medical attention for any medical condition, such as a staph infection, he may have. (Ex. B, Johnson Decl., ¶ 9.)

Plaintiff's suspicions are not grounded in fact, and any claims based on these allegations do not state a constitutional violation.

The "safety hazards" Plaintiff alleges in his Amended Complaint include: (1) the failure to segregate inmates convicted of misdemeanors and felonies from pretrial detainees[11] (Doc. 18, ¶ 27.); (2) exposed wires; (3) malfunctioning sinks; (4) a dirty shower (Doc 18, ¶ 28.); and (5) that "[t]here appears to be no working fire alarms, smoke alarms or sprinkler systems."[12] (Doc. 18, ¶ 29, emphasis added.)

With regard to Defendants' alleged failure to separate inmates convicted of misdemeanors and felonies from pretrial detainees, Plaintiff fails to allege facts to support a finding that such activity, if true, would pose a serious risk of imminent harm to Plaintiff. Farmer v. Brennan, 511 U.S. at 837.

As to Plaintiff's allegations regarding exposed wires, he again fails to allege facts to support the conclusion that such wires, if in fact they are exposed, pose a risk to his health. For example, exposed wires on a ceiling twenty feet above the entry to an inmate's cell certainly do not pose a serious risk of imminent harm to an inmate. Farmer v. Brennan, 511 U.S. at 837.

As to Plaintiff's allegations of malfunctioning sinks and dirty showers, he fails to allege facts that would support a finding that such conditions, if true, pose a serious risk of imminent harm to Plaintiff. Farmer v. Brennan, 511 U.S. at 837. Instead, such allegations mirror Plaintiff's many complaints that aspects of his confinement impinge upon his right to be "comfortable." As discussed above, Plaintiff cannot bring an action against Defendants for depriving him of his "right" to "live as comfortably as possible." Bell v. Wolfish, supra, 441

---

[11] Plaintiff, although a pretrial detainee, is awaiting his trial for murder after having eluded authorities for three years by hiding in Georgia and using an alias. He has failed to allege that he has suffered or will suffer imminent harm as a result of the purported lack of segregation of inmates and pretrial detainees.

[12] It goes without saying that simply because Plaintiff cannot find the fire alarms, smoke alarms, and sprinkler system does not mean they do not exist.

U.S. at 537. Neither of these claims constitute an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347.

Regarding Plaintiff's claims that there do not appear to be working fire alarms, smoke alarms, or sprinkler systems, Plaintiff's conclusory suspicions are insufficient to state a claim under § 1983. See Marsh, 268 F.3d at 1036 n.16. See also Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir.1974)."). Furthermore, as the record reveals, Plaintiff's suspicions regarding the absence of a working fire detection and prevention system are incorrect.[13] (Ex. C, Davidson Decl. ¶ 22.) Plaintiff's suspicions are not grounded in fact, and any claims based on these allegations do not state a constitutional violation.

Plaintiff has further alleged that Defendants, through their deliberate indifference, "refus[ed] to allow Plaintiff access to legal materials" when he was preparing his *pro se* Complaint. (Doc. 18, ¶¶ 88, 126.) Although Randolph County Jail has no law library, inmates are allowed access to any legal materials provided to them by their attorney. (Ex. C, Davidson Decl. ¶ 23.) Municipal jails are not required by law to have a law library. See e.g., Kane v. Garcia Espitia, 546 U.S. 9 (2005); Wilson v. Blankenship, 163 F.3d 1284 (11th Cir. 1998). Further, even if Plaintiff could show that his lack of access to a jail law library violated his constitutional rights, he has not shown that the absence of a law library prejudiced his access to legal relief. See Wilson v. Blankenship, 163 F.3d at 1291 ("[I]n an access-to-courts claim, 'a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.' [citation omitted]  Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his 'efforts to proceed with a legal claim in a criminal appeal, post-conviction matter, or civil rights

---

[13] The jail's fire detection and prevention system is fully operational and includes fire alarms, smoke alarms, and a sprinkler system. This system is regularly maintained, and is inspected at least once annually. (Ex. C, Davidson Decl. ¶ 22.)

action seeking to vindicate basic constitutional rights.'") (quoting <u>Sabers v. Delano</u>, 100 F.3d 82, 84 (8th Cir.1996) (per curiam)) (emphasis added). Plaintiff has not been prejudiced by his inability to access a law library. In fact, two days after filing his pro se Complaint, the Court held a status conference on it, and two days later, the Court issued an Order that entered a Temporary Restraining Order and appointed counsel for Plaintiff.

Additionally, Plaintiff alleges in his Amended Complaint that he is only allowed to go outside to exercise for thirty minutes a week. (Doc. 18, ¶ 37.) The Eleventh Circuit has refused to afford relief to inmates for claims for inadequate exercise. <u>See</u> <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1292 (11th Cir. 1998) ("Under the analysis prescribed by <u>Bell</u>, there is <u>no evidence whatsoever in the record that Wilson or any other inmate at MCJ was denied outdoor exercise by Blankenship or Hall as punishment</u>.") (emphasis added). The old Fifth Circuit reached a similar conclusion in <u>Jones v. Diamond</u>, 636 F.2d 1364, 1374 (5th Cir. 1981) (en banc).[14]

Plaintiff has failed to allege in his Amended Complaint, and the record does not indicate, that these alleged actions of Sheriff Fuller and Administrator Johnson were "intentionally imposed … for a punitive purpose." <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1291-92 (11th Cir. 1998). Neither do these allegations, even if true, amount to an "unquestioned and serious deprivation of basic human needs." <u>Rhodes</u>, 452 U.S. at 347. Accordingly, Plaintiff has failed to state a claim in his Amended Complaint against Sheriff Fuller or Administrator Johnson for subjecting Plaintiff to inhumane conditions and treatment in violation of the Fourteenth Amendment. Those claims must be dismissed.

---

[14] See note 14, <u>supra</u>.

> c. **Plaintiff cannot demonstrate that either Sheriff Fuller or Administrator Johnson has by any affirmative act deprived Plaintiff of his First Amendment rights.**

Plaintiff's claim for violation of his First Amendment rights consist solely of the conclusory and unsubstantiated allegation that he is

> "forced to listen to weekly Christian teachings and preaching in violation of his First Amendment rights. The only books [allowed by jail staff are of a religious nature, particularly the Bible and Christian tracts, and the only religious assembly offerings are for Christians where all inmates are compelled to listen as they cannot leave."

(Doc. 18, ¶ 33.)  Plaintiff also alleges that both Sheriff Fuller and Administrator Johnson have "refus[ed] [Plaintiff] access to reading materials other than religious texts and [has] compel[ed] [Plaintiff] and other inmates to attend prayer services."  (Doc. 18, ¶ ¶ 94, 142.)  As discussed above, unsupported conclusions of mixed fact and law are insufficient to establish a viable claim for a constitutional violation.  See Marsh, 268 F.3d at 1036 n.16.

"In the First Amendment context ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996).  While inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 345 (1987); Turner v. Safley, 482 U.S. 78 (1987); Cruz v. Beto, supra.  The Supreme Court held in Turner that when a prison regulation or policy impinges upon an inmate's constitutional rights, the policy is valid if it is reasonably related to legitimate penological interests.  Turner, 482 U.S. at 89-91; see also Pope v. Hightower, 101 F.3d 1382, 1384 (11th Cir. 1996).  Prison administrators should be given great deference in adopting and executing policies and practices.

Absent substantial evidence in the record indicating that officials exaggerated their response to considerations of order, discipline, and security, courts ordinarily should defer to their judgment. See Bell v. Wolfish, 441 U.S. 520, 547 (1979); see also McCorkle v. Johnson, 881 F.2d 993 (11th Cir.1989).

The record reveals that the Randolph County Jail has a policy that prohibits discrimination against any inmate for his religious preference.  (Ex. A, Fuller Decl., ¶ 15; Ex. B, Johnson Decl., ¶ 18; Ex. C, Davidson Decl., ¶ 17.)  The record also indicates that all employees of the Randolph County Jail are prohibited from promoting or discouraging any religion.  (Ex. B, Johnson Decl., ¶ 19; Ex. C, Davidson Decl., ¶ 18.)  In fact, the services Plaintiff complains of are sponsored by private religious organizations outside the jail that coordinate their meetings with the jail staff.  (Ex. B, Johnson Decl., ¶ 21; Ex. C, Davidson Decl., ¶ 20.)  No inmate is required to attend any of these meetings, but if he attends, he cannot leave the meeting until it concludes for security reasons.  (Ex. A, Johnson Decl., ¶ 21; Ex. C, Davidson Decl., ¶ 20.)  The only private religious organization that is currently scheduling meetings at the Randolph County Jail is a Christian organization, but jail staff has previously coordinated with organizations from other religions that have sought to hold meetings in the jail.  (Ex. C, Davidson Decl., ¶ 21.) These private religious organizations outside the jail also provide the jail with Bibles and other religious materials that the inmates can check out.  (Ex. B, Johnson Decl. ¶ 20; Ex. C, Davidson Decl., ¶ 19.)  To the extent that the jail policy impinges Plaintiff's constitutional rights, it is reasonably related to legitimate penological interests and is valid.  Accordingly, Plaintiff has failed to state a valid First Amendment claim in his Amended Complaint against Defendants. Those claims must be dismissed.

2.      **Neither the caselaw of the Eleventh Circuit nor that of the United States Supreme Court placed Sheriff Fuller and Jail Administrator Johnson on notice that their conduct would violate Plaintiff's "clearly established" federal rights.**

Even if Plaintiff had successfully stated a constitutional violation, he must prove that the state of the law provided the Defendants "fair warning" that their conduct would violate Plaintiff's "clearly established" federal rights.   Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).   In determining whether the conduct of the Defendants was clearly established as violating Plaintiff's constitutional rights, the reviewing court must examine the state of the law at the time the alleged deprivation occurred.   See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).   A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."   Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.   "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose," here, the Alabama Supreme Court.   Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).   "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."   Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003), 354 F.3d at 1318 (quoting 28 F.3d at 1149).

a.      **Denial of Medical Care**

With regard to Plaintiff's claim for denial of medical care, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's

medical needs when the injuries were not serious and were treated by doctors on two different occasions. As noted above, Plaintiff's alleged epilepsy condition was not "serious" enough for him to tell Defendants of his need for treatment of that condition, nor was it "serious" enough for Plaintiff to mention the condition to the medical professional at either of his two check-ups. No cases in this Circuit have held a Sheriff or Jail Administrator liable for deliberate indifference where an inmate has received medical treatment on multiple occasions for conditions that were not serious. Therefore, Sheriff Fuller and Administrator Johnson cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### b.    Inhumane Conditions and Treatment

Neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a Sheriff or a jail administrator is liable under 42 U.S.C. § 1983 for jail conditions that were not "intentionally imposed … for a punitive purpose," Wilson v. Blankenship, 163 F.3d at 1291-92, or that do not amount to an "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. Here, the unsubstantiated conditions of which Plaintiff complains in his Amended Complaint, even if true, are primarily conditions that affect his "right" to "comfortable … accommodations" (Doc. 18, ¶¶ 82, 121), a right that the Constitution does not guarantee. To the extent that Plaintiff attempts to allege conduct on behalf of Defendants in his Amended Complaint that poses a risk of injury of harm to Plaintiff, the law of this Circuit would not provide Defendants "fair notice" that the conduct alleged in the Amended Complaint was unconstitutional. The law of this Circuit has not held a sheriff or a jail administrator liable for the failure to segregate inmates convicted of misdemeanors and felonies from pretrial detainees where there was no serious risk of imminent harm to the plaintiff; nor has the caselaw of this Circuit held a sheriff or a jail administrator

liable for exposed wires where there was no serious risk of imminent harm to the plaintiff; nor has the caselaw of this Circuit held a sheriff or a jail administrator liable; nor has the caselaw of this Circuit held a sheriff or a jail administrator liable for malfunctioning sinks and dirty showers where there was no serious risk of imminent harm to the plaintiff; nor has the caselaw of this Circuit held a sheriff or a jail administrator liable for the "appear[ance] of no working fire alarms, smoke alarms or sprinkler systems" (Doc. 18, ¶ 29.), nor has the caselaw of this Circuit held a sheriff or a jail administrator liable for "rumor[s]" that jail inmates have communicable diseases.   (Doc. 18, ¶ 32.)   Therefore, Sheriff Fuller and Administrator Johnson cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### c.    First Amendment Claims

As to Plaintiff's conclusory claims for violation of his First Amendment rights, neither the United States Supreme Court, nor the Eleventh Circuit, nor the Alabama Supreme Court has held that a sheriff and a jail administrator may be held liable for allowing private religious organizations to provide reading religious material to inmates.  Nor has any court in this Circuit ever held a sheriff and a jail administrator liable for allowing private religious organizations to hold non-mandatory religious meetings in the jail.  Therefore, Sheriff Fuller and Administrator Johnson cannot be deemed to have violated Plaintiff's "clearly established" rights under the existing caselaw.

### 3.    The text of the constitutional provisions that Plaintiff alleges were violated do not on their face prohibit the Defendants' conduct.

The Eleventh Circuit has recognized an alternate method for establishing that the Defendants had notice that their conduct was unlawful.  Accordingly, even where Plaintiff cannot demonstrate that the caselaw provides the Defendants notice that their conduct violates his constitutional rights, as is the case here, he can establish that the Defendants still had "fair warning"

of the constitutional deficiencies of their conduct from the text of the constitutional provision in question.  In such a case, Plaintiff must either demonstrate that the pertinent federal statute or federal constitutional provision is specific enough on its face to prohibit the Defendants' conduct as unconstitutional, even in the total absence of caselaw.  <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1317 (11th Cir. 2003).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  To establish this case as an "obvious clarity" case, Plaintiff must show that "the words of the pertinent federal statute or federal constitutional provision" establishing the federal right allegedly violated are "specific enough to establish clearly the law applicable to particular conduct" such that "case law is not needed to establish that the conduct cannot be lawful."  <u>Vinyard</u>, 311 F.3d at 1350.

Neither the text of the Eighth Amendment, nor the text of the First Amendment, nor the text of the Fourteenth Amendment on its face, prohibits the conduct of Sheriff Fuller and Administrator Johnson as unconstitutional.  Even if Plaintiff had alleged conduct that violated his constitutional rights, neither the relevant bodies of caselaw nor the text of the relevant constitutional provisions would have put Defendants on notice that their conduct would have violated Plaintiff's constitutional rights.

Accordingly, because Plaintiff has not alleged in his Amended Complaint conduct on behalf of Defendants that is prohibited as unconstitutional by the caselaw of this Circuit or by the text of the constitutional provisions in question, Defendants are entitled to qualified immunity as a matter of law.  Accordingly, Plaintiffs claims against them should be dismissed.

### B.    PLAINTIFF HAS FAILED TO ALLEGE PERSONAL INVOLVEMENT AS REQUIRED BY 42 U.S.C. § 1983.

In order to establish a constitutional violation for conduct under § 1983 Plaintiff must allege personal involvement on behalf of Defendants.  The language of 42 U.S.C. § 1983 requires proof of

an affirmative causal connection between the actions taken by Defendants and the constitutional deprivation. Swint v. City of Wadley, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of Defendants, a policy established by Defendants resulting in indifference to constitutional rights, or a breach of a duty imposed state of local law which results in constitutional injury. Zatler v. Wainwright, 802 F. 2d 397 (11th Cir. 1986).

Plaintiff has failed to allege that either Sheriff Fuller or Administrator Johnson was in any way personally involved in the allegations surrounding Plaintiff's denial of medical treatment claim, Plaintiff's inhumane conditions and treatment claim, and Plaintiff's First Amendment claim. Plaintiff has offered no allegation demonstrating that these named Defendants were in any way involved in the conduct that Plaintiff alleges is unconstitutional. There are absolutely no facts in the Amended Complaint or in the record to show that Defendants personally participated in the circumstances surrounding Plaintiff's claims, nor does Plaintiff allege specifically how these Defendants violated his constitutional rights.

The Eleventh Circuit in Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999), established exactly what is required to state a claim (or prove) supervisory liability:

> Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).

193 F.3d at 1269. The causal connection may also be established where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights."

<u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing <u>Zatler v. Wainwright</u>, 802 F.2d 397 (11th Cir. 1986)).  Plaintiff's Complaint as amended contains no allegations demonstrating that these Defendants were in any way involved in the actions he claims were constitutionally infirm.  Consequently, Plaintiff's § 1983 claim is based upon nothing more than <u>respondeat superior</u>, the Complaint fails to state a claim for which relief may be granted against these Defendants.  As such, all Plaintiff's claims are due to be dismissed.

C.    **THERE IS NO *RESPONDEAT SUPERIOR* LIABILITY UNDER 42 U.S.C. § 1983.**

To the extent that Plaintiff's claims against these Defendants are an attempt to hold them liable under a *respondeat superior* theory, they must fail.  Neither the express language of § 1983 nor the holdings of the United States Supreme Court support liability on this basis.

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, <u>subjects, or causes to be subjected</u>, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.)  The language of the statute requires that there be a direct causal link between Plaintiff and the actions of a putative defendant.  Merely employing an individual who causes harm is insufficient to invoke the remedy of this statute.

The United States Supreme Court addressed this exact issue and adopted this holding nearly 30 years ago.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978).  In <u>Monell</u>, the Court cited § 1983 and held, "a municipality cannot be held liable under § 1983 on a <u>respondeat superior</u> theory."  436 U.S. at 691.  Accordingly, as both the explicit text of § 1983

and the opinions of the United States Supreme Court forbid vicarious liability, Plaintiff's respondeat superior claims fail.

These Defendants are entitled to qualified immunity on each of Plaintiff's claims. First, to the extent Plaintiff's Amended Complaint makes out a proper supervisory claim against these Defendants, neither Sheriff Fuller nor Administrator Johnson violated Plaintiff's federally protected rights. Second, even if Plaintiff could demonstrate a violation of his rights, no clearly established law gave these Defendants "fair warning" that their conduct were illegal.

Based on the foregoing, it is clear that the Defendants have not violated Plaintiff's constitutional rights. Further, Plaintiff cannot show that clearly established law provided these Defendants with fair warning that their conduct was unlawful. Therefore, these Defendants are entitled to qualified immunity.

## IV.  THE DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY FROM THE PLAINTIFF'S STATE LAW CLAIMS.

With respect to any attempt by the Plaintiff to allege claims based on Alabama law, the Defendants are absolutely immune to all such attempts. The legal basis for absolute immunity is straightforward and well settled. The Alabama Constitution of 1901 prohibits suits against the State. See Alabama Constitution of 1901, art. I, § 14. Under the Alabama Constitution of 1901, sheriffs are executive officers of the State of Alabama. See Alabama Constitution of 1901, art. V, § 112; Oliver v. Townsend, 534 So. 2d 1038, 1044 (Ala. 1988); Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991); see also McMillian v. Monroe County, 117 S. Ct. 1734 (1997) (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties). A sheriff's employees are legally an extension of the sheriff and are likewise considered officers of the State of Alabama. See Ex parte Sumter County, 953 So. 2d 1235 1239-40 (Ala. 2006) citing Mosely v. Kennedy, 17 So. 2d 536, 537 (Ala. 1944) ("Deputies and jailers are alter

egos of the Sheriff and are state employees."); Hereford, 586 So. 2d at 210. Suits against Alabama sheriffs and their employees are therefore prohibited because they are suits against the State. See Parker, 519 So. 2d at 446; Hereford, 586 So. 2d at 210; Ex parte Haralson, 853 So. 2d 928, 932 (Ala. 2003). This is true even when the sheriff is sued "individually, and as Sheriff." Parker, 519 So. 2d at 445.

There are only limited exceptions to this immunity. An Alabama sheriff is immune from suit

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

Parker, 519 So. 2d at 443. With only these narrow exceptions, Alabama sheriffs and their employees are immune from suit. Assuming, *arguendo*, that Plaintiff's requests for a declaratory judgment and injunctive relief are construed as arising under state law, such requests do not represent exceptions to the sovereign immunity to which Sheriff Fuller and Administrator Johnson are entitled. An Alabama sheriff (and his jail administrator) are immune from suit except for actions, *inter alia*, "(3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act." Parker, 519 So. 2d at 443.

The Plaintiff's request for a declaratory judgment does not seek construction of a statute. (See Doc. 18, General Prayer for Relief, ¶ 8.) (Plaintiff requests "a declaratory judgment that the policies and practices complained of herein are unlawful and violative of the First and Fourteenth Amendments to the United States Constitution."). Similarly, the injunctive relief requested by

the Amended Complaint – "an injunction requiring the Defendants to provide proper medical treatment, sanitary conditions and safe minimally comfortable conditions to Plaintiff" (Doc. 18, ¶ 159(a).) – does not fall under one of the two relevant exceptions to Article I, § 14 immunity: "(3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law." Parker, 519 So. 2d at 443. Thus, Defendants Fuller and Johnson are entitled to absolute sovereign immunity as to all state-law claims against them. As a result, all such claims are due to be dismissed.

## V.    ALL CLAIMS FOR INJUNCTIVE RELIEF ARE DUE TO BE DISMISSED.

To the extent the Plaintiff makes claims for injunctive relief against Defendants Fuller and Johnson, those claims are due to be dismissed. Plaintiff cannot overcome the nearly insurmountable bar of establishing sufficient standing as a prerequisite to the obtaining of injunctive relief, as described by the United States Supreme Court in City of Los Angeles v. Lyons, 461 U.S. 95 (1983). In City of Los Angeles v. Lyons, the Court explained that,

> [i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, but for the purpose of arrest, issuing of citation, or for questioning, or (2) that the city ordered or authorized police officers to act in such a manner.

Id. at 105-06 (emphasis original). There, injunctive relief was denied because Lyons failed to establish that he "faced a realistic threat from the future application of the City's policy." Id. at 106 n.7; see also 31 Foster Children v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003) ("As Lyons illustrates, future injury that depends on either the random or unauthorized acts of a third party is too speculative to satisfy standing requirements.").

Here, Plaintiff is well short of the posture that Lyons represented before the United States Supreme Court. To begin, there is no policy at issue here – informal or otherwise. Assuming,

*arguendo*, that the Plaintiff has had an encounter with one or more Defendants, he must still prove that either (1) the Defendant he seeks to enjoin <u>always</u> violates his constitutional rights when given the opportunity or (2) that such Defendant acted, or encouraged or authorized officers to act. Here, Plaintiff has not alleged that either Sheriff Fuller or Administrator Johnson <u>always</u> violates his constitutional rights when given the opportunity, or has encouraged or authorized any other jail official to act in violation of Plaintiff's constitutional rights.

Since Plaintiff has not even attempted to satisfy either one of these requisites, it is clear that he lacks sufficient standing for injunctive relief. The Amended Complaint does not begin to substantiate a single reason why any Defendant should be enjoined. Therefore, Plaintiff's claims for injunctive relief against these Defendants are due to be dismissed.

Before a plaintiff is entitled to permanent injunctive relief from a constitutional violation, the plaintiff must first establish that such a violation occurred. <u>See</u> <u>Newman v. State of Ala.</u>, 683 F.2d 1312, 1319 (11th Cir. 1982) <u>citing</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 377 (1976). Then, he must show: (1) irreparable injury if the injunction does not issue and (2) lack of an adequate remedy at law. <u>Newman</u>, 683 F.2d at 1319 <u>citing</u> <u>Beacon Theatres, Inc. v. Westover</u>, 359 U.S. 500, 506 (1959). If the plaintiff is able to satisfy all of these requirements, the court may then grant injunctive relief, but only to the extent necessary to remedy the constitutional violation. <u>Newman</u>, 683 F.2d at 1319.

The Plaintiff fails with respect to each one of these three requirements. He requests that the Court issue an injunction "requiring the Defendants to provide proper medical treatment, sanitary conditions and safe minimally comfortable conditions to Plaintiff." (Doc. 18, ¶ 159(a).) This request essentially asks the Court to enjoin one or more Defendants to comply with the legal obligations they are already obligated to follow. It is well-established in this circuit that an

injunction requiring a party to "obey the law" is impermissible.  Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006) citing Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999).  Thus, Plaintiff's request for injunctive relief is due to be denied.

## CONCLUSION

Based on the foregoing, Defendants Jeffery Fuller, Sheriff of Randolph County, Alabama, and Shirley Johnson, Randolph County Jail Administrator, request that this Honorable Court enter an order dismissing all claims against them in this action.

Respectfully submitted this 25th day of June, 2007.

> **s/Kendrick E. Webb**
> KENDRICK E. WEBB, Bar No. WEB022
> C. RICHARD HILL, JR., Bar No. HIL045
> JOSEPH L. HUBBARD, JR., bar No. HUB015
> ATTORNEYS FOR DEFENDANTS JEFFERY
> FULLER, AND SHIRLEY JOHNSON
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  kwebb@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of June, 2007, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send notification to the following CM/ECF participants:  **Kesa M. Johnston, Esq. and Jay Lewis, Esq.**

> **s/Kendrick E. Webb**
> OF COUNSEL

# Exhibit A
# Declaration of Jeffery Fuller

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) | |
| LATHONIA J. WRIGHT, | ) | |
| COMMISSIONER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION UNDER PENALTY OF PERJURY
## OF JEFFERY FULLER[1]

STATE OF ALABAMA        )
                        )
COUNTY OF RANDLOLPH     )

1.    My name is Jeff Fuller.  I am over the age of nineteen and am competent to execute this declaration.  The statements made in this declaration are based on my personal knowledge.  I am the duly elected Sheriff of Randolph County, Alabama and have been since January 1995.

2.    I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Jail.

3.    Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County.  He was extradited from Georgia, where the U.S. Marshal Fugitive Task Force had caught him.

---

[1] See 28 U.S.C. § 1746.

4.     I have never denied necessary medical care or treatment to an inmate, nor have I ever authorized or allowed anyone to do so.

5.     It is the policy of the Randolph County Jail to place a new inmate on a list for a physical and a health screening. Mr. Henderson was placed on the list for a physical and a health screening, but because the Nurse Practitioner that previously had performed medical examinations for the inmates stopped coming to the jail without notice to me or my staff, Mr. Henderson did not receive an immediate health screening and physical.

6.     It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner.

7.     Never have I received any grievance from Mr. Henderson complaining about any aspect of his incarceration; specifically, never has Mr. Henderson complained to me about any problems of a medical nature. As there is a grievance procedure in the Randolph County Jail, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration. However, I never received any such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning any matters. Therefore, Mr. Henderson has not complied with the grievance procedures of the Randolph County Jail.

8.     To my knowledge, Mr. Henderson has never filled out a medical request form. Mr. Henderson has never complained to me about his medical condition since he has been in the

Randolph County Jail. Moreover, Mr. Henderson has never complained to me about anything since he has been in the Randolph County Jail.

9.    To my knowledge, Mr. Henderson never submitted an inmate request form, a grievance, or any request for medical care, except for one oral request for medical care on Thursday, May 31, 2007, and on that day, Mr. Henderson saw Jim Gunnels, a Nurse Practitioner.

10.    Mr. Henderson never reported having a seizure while at the Randolph County Jail until after he filed his Complaint. I never witnessed Mr. Henderson have a seizure while at the Randolph County Jail, nor did any employee at the Jail inform me that he had a seizure.

11.    To this day, Mr. Henderson has not been prescribed any anti-convulsant medication for an epilepsy condition by any medical professional to my knowledge.

12.    I am not personally familiar with the allegations made the basis of Mr. Henderson's Complaint as Mr. Henderson has never made any complaint to me specifically, either verbally or written.

13.    I state affirmatively that I neither acted, nor caused anyone to act, in such a manner as to deprive Mr. Henderson of any right to which he was entitled.

14.    I have never denied an inmate necessary medical care or treatment, nor have I authorized or allowed anyone to do so.

15.    It is the policy of the Randolph County Jail to not discriminate against any inmate on the basis of his religious preference.

16.    I appointed Shirley Johnson as my Jail Administrator to handle the day-to-day operation and supervision of the detention facility.

17.   I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 25 TH day of June, 2007

JEFFERY FULLER

# Exhibit B
# Declaration of Shirley Johnson

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DANNY LEE HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) |
| LATHONIA J. WRIGHT, | ) |
| COMMISSIONER, et al. | ) |
| | ) |
| Defendants. | ) |

## DECLARATION UNDER PENALTY OF PERJURY
## OF SHIRLEY JOHNSON[1]

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RANDOLPH | ) |

1.     My name is Shirley Johnson.  I am over the age of nineteen and am competent to execute this declaration.  The statements made in this declaration are based on my personal knowledge.

2.     I am the Jail Administrator of the Randolph County, Alabama Detention Facility, and have served as Jail Administrator since 1999.  I began my employment with the Randolph County Sheriff's Department in 1989 as a matron.  I am a graduate of Jail Management School.

3.     I am aware of the standards required by state and federal law for providing inmates incarcerated in Alabama jails with medical care.  I have had input into making decisions regarding the policies and procedures of the Randolph County Sheriff's Department for providing inmates in Randolph County with medical care, and have been actively involved in the

day to day provision of medical care to inmates during the entire time I have worked in the corrections field.

4.      I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Detention Facility.

5.      Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County.  He was extradited from Georgia, where the U.S. Marshall Fugitive Task Force had caught him.

6.      Because Mr. Henderson was using an alias while in Georgia, when he was transported from Georgia to the Randolph County Jail, his transport sheet was not marked at all with any notation of his medical condition, and it was unclear whether he had any prescriptions for medications or whether he was currently taking any medications.

7.      It is the policy of the Randolph County Jail to not administer medication to an inmate until that inmate has received a health-screening and a physical from a doctor, unless an inmate arrives with prescribed medication or a prescription for medication, in which case we call the Wedowee Hospital or the Wedowee Clinic to get approval for administering that medication.

8.      It is the policy of the Randolph County Jail that to see a doctor, an inmate must fill out a medical request form.  Mr. Henderson has never filled out a medical request form.  Mr. Henderson has never complained about his medical condition since he has been in the Randolph County Jail.  Moreover, Mr. Henderson has never complained about anything since he has been in the Randolph County Jail.

9.      It is the policy of the Randolph County Jail to place a new inmate on a list for a physical and a health screening.  The Nurse Practitioner at the Wedowee Clinic will usually call

---

[1] See 28 U.S.C. § 1746.

2

the jail once or twice a week to get a list of the inmates needing medical attention on the following day.

10.    Mr. Henderson was placed on the list for a physical and a health screening, but because the Nurse Practitioner that previously had performed medical examinations for the inmates stopped coming to the jail without notice to me or my staff, Mr. Henderson did not receive an immediate health screening and physical. He was, however, on the inmate screening list and had been scheduled for a health screening at the time the Court entered the Temporary Restraining Order, and arrangements had been made for the Nurse Practitioner from the Cleburne County Jail to see Mr. Henderson.

11.    It is the policy of the Randolph County Jail to fax weekly a refill list for the medications prescribed to our inmates. Because Mr. Henderson did not come into the Randolph County Jail with any prescriptions for any medications, and because it was not clear if Mr. Henderson had any medications prescribed to him, Lieutenant Krista Traylor did not put any medications on the refill list for him.

12.    It is the policy of the Randolph County Jail to contact the Wedowee Clinic for permission to administer any medication that a new inmate was carrying when he was arrested. We are not licensed medical professionals and are unable to administer any medications to our inmates without permission from a medical professional. To my knowledge, Mr. Henderson was not carrying any medications when he was arrested.

13.    If an inmate needs medical care for emergency needs, that inmate is transported by car or ambulance to the Wedowee Hospital. Once that inmate is discharged, any and all care instructions are followed to the best of our ability.

3

14. On May 23, 2007, Sgt. Vernon Haynes took Mr. Henderson to the Wedowee Hospital.

15. On June 4, 2007, I accompanied Captain Craig Davidson and Jailer Ronnie Smith, to take Mr. Henderson a medical release form to sign, so that we could access his medical records to determine if and when he was diagnosed with epilepsy, as well as what anti-convulsant medications, if any, he had previously been prescribed. Mr. Henderson refused to sign the release until he had spoken with his attorney, because he claims to have received medical attention under an assumed name.

16. Internal grievance procedures at the Randolph County, Alabama Detention Facility are available to all inmates. It is the policy of the Randolph County, Alabama Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly. Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have. It is further the policy and procedure of the Randolph County, Alabama Detention Facility to place each such grievance in the inmate's file for a record of the same.

17. Mr. Henderson has not complied with the grievance procedures of the Randolph County, Alabama Detention Facility. I have never received any grievance from Mr. Henderson concerning any of the allegations made the basis of his Complaint. As there is a grievance procedure in the Randolph County Detention Facility, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration. I never received any such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning these matters. Had any request form or grievance been submitted by Mr. Henderson, it

would have been placed in his inmate file per Detention Facility policy. However, Mr. Henderson's inmate file is devoid of any such grievance.

18.     It is the policy of the Randolph County Jail to not discriminate against any inmate on the basis of his religious preference.

19.     It is jail policy that all employees of the Randolph County Jail are prohibited from promoting or discouraging any religion.

20.     Some private religious organizations outside the jail coordinate with us to provide the inmates with religious literature that they may read if they so choose.

21.     Some private religious organizations outside the jail coordinate with us to provide the inmates with religious services or meetings in the jail. These organizations usually contact us to set up a meeting. Inmates are not required to attend any of these meetings, but if an inmate chooses to attend, he cannot leave the meeting until it concludes for security reasons.

22.     I have complied with all policies and procedures of the Randolph County, Alabama Detention Facility. I am not aware of nor have I authorized or allowed any deviation from said policies and procedures.

23.     I certify and state that the documents from Mr. Henderson's Inmate File and from the General Jail Records provided to the Court which are attached to the Defendants' Motion to Dismiss or, in the Alterative, Motion for a Summary Judgment and Brief in Support are true and correct copies of these records, kept at the Randolph County Detention Facility in the regular course of business. I am the Custodian of these Records.

24.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the ___19___ day of June, 2007

_Shirley Johnson_
SHIRLEY JOHNSON

# Exhibit C
# Declaration of Craig Davidson

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE HENDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07-cv-452-MEF-WC |
| | ) | |
| LATHONIA J. WRIGHT, | ) | |
| COMMISSIONER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

DECLARATION UNDER PENALTY OF PERJURY
OF CRAIG DAVIDSON[1]

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RANDOLPH | ) |

1.      My name is Craig Davidson.  I am over the age of nineteen and am competent to execute this declaration.  The statements made in this Declaration are based on my personal knowledge.  I am the Assistant Jail Administrator of the Randolph County, Alabama, Jail.  I have served the Randolph County Sheriff's Department for four and a half years as a Captain.  Before that I served as a Sergeant at the Chambers County Sheriff's Department for three years and as a jailer for two months.  I am a graduate of Jail Management School.

2.      I am aware of the standards required by state and federal law for providing inmates incarcerated in Alabama jails with medical care.  I have had input into making decisions regarding the policies and procedures of the Randolph County Sheriff's Department for providing inmates in Randolph County with medical care, and have been actively involved in the

---

[1] See 28 U.S.C. § 1746.

day to day provision of medical care to inmates during the entire time I have worked in the corrections field.

3.    I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Detention Facility.

4.    Mr. Henderson was admitted to the Randolph County Jail on April 21, 2007, awaiting trial for the murder of a man in Randolph County. He was extradited from Georgia, where the U.S. Marshal Fugitive Task Force had caught him.

5.    I have never denied necessary medical care or treatment to an inmate, nor have I ever authorized or allowed anyone to do so.

6.    It is the policy and procedure of the Randolph County Detention Facility to provide prompt medical attention to each and every inmate upon their request. A request may be submitted via a written request form or made verbally to a correctional officer. The inmate is then put on the list to see the Nurse Practitioner, or, in emergency situations, taken immediately to the Wedowee Hospital across the street from the Jail. Inmates can also be seen, at least weekly, by the jail Nurse Practitioner.

7.    Mr. Henderson has neither filed either an inmate request form seeking medical care nor a grievance complaining about any aspect of his incarceration (including medical care); specifically, Mr. Henderson has never complained to me about any problems of a medical nature. The only time Mt. Henderson has submitted an inmate request form was to request that a jail official complete a certificate stating the amount of money in his inmate account, so Plaintiff could proceed with his Complaint against Defendants as an indigent.

2

8.    Internal grievance procedures at the Randolph County, Alabama Detention Facility are available to all inmates.  It is the policy of the Randolph County, Alabama Detention Facility that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a detention center staff member for any grievance they may have.  It is further the policy and procedure of the Randolph County, Alabama Detention Facility to place each such grievance in the inmate's file for a record of the same.

9.    Mr. Henderson has not complied with the grievance procedures of the Randolph County, Alabama Detention Facility.  I have never received any grievance from Mr. Henderson concerning any of the allegations made the basis of his Complaint.  As there is a grievance procedure in the Randolph County Detention Facility, it could have been used by Mr. Henderson to make known any questions or concerns he had regarding his incarceration.  I never received any such grievance, and to the best of my knowledge, no grievance was ever written by Mr. Henderson concerning these matters.  Had any request form or grievance been submitted by Mr. Henderson, it would have been placed in his inmate file per Detention Facility policy.  However, Mr. Henderson's inmate file is devoid of any such grievance.

10.    Mr. Henderson has never complained about his medical condition since he has been in the Randolph County Jail.

11.    If an inmate needs medical care for emergency needs, that inmate is transported by car or ambulance to the Wedowee Hospital.  Once that inmate is discharged, the staff is to ensure that any and all care instructions are followed to the best of our ability.  Mr. Henderson

3

never complained of any emergency medical needs, so he was never taken to the Wedowee Hospital for emergency treatment.

12.    On May 23, 2007, Sheriff Fuller ordered me to take Mr. Henderson to the Wedowee Hospital. I ordered Sgt. Haynes to take Mr. Henderson to the Wedowee Hospital. To my knowledge, Mr. Henderson was taken to the Wedowee Hospital that day.

13.    Upon learning of Mr. Henderson's alleged epilepsy condition, after Mr. Henderson filed his Complaint, I asked him about his condition. He told me that he was last seen by a doctor for the condition three or four years ago in Heflin, Alabama. He also told me that he had not taken any epilepsy medication in four or five months.

14.    Mr. Henderson never reported having a seizure while at the Randolph County Jail until after he filed his Complaint. After he had filed his Complaint, Mr. Henderson told me that he had the seizure two weeks earlier.

15.    I never witnessed Mr. Henderson have a seizure while at the Randolph County Jail, nor did any employee at the Jail inform me that he had a seizure.

16.    On June 4, 2007, I, along with Jail Administrator Shirley Johnson, and Jailer Ronnie Smith, took Mr. Henderson a medical release form to sign, so that we could access his medical records to determine if and when he was diagnosed with epilepsy, as well as what anti-convulsant medications, if any, he had previously been prescribed. Mr. Henderson refused to sign the release until he had spoken with his attorney, because he claims to have received medical attention under an assumed name.

4

17.    It is the policy of the Randolph County Jail to not discriminate against any inmate on the basis of his religious preference.

18.    It is jail policy that all employees of the Randolph County Jail are prohibited from promoting or discouraging any religion.

19.    Some private religious organizations outside the jail coordinate with us to provide the inmates with religious literature that they may read if they so choose.

20.    Some private religious organizations outside the jail coordinate with us to provide the inmates with religious services or meetings in the jail. These organizations usually contact us to set up a meeting. Inmates are not required to attend any of these meetings, but if an inmate chooses to attend, he cannot leave the meeting until it concludes for security reasons.

21.    The only private religious organization that is currently scheduling meetings at the Randolph County Jail is a Christian organization, but I have previously worked with other faith-based organizations, such as the Jehovah's Witnesses, that have sought to hold meetings in the jail. Jail policy prohibits precluding any religious organization from scheduling meetings at the jail on the basis of their beliefs.

22.    The jail is equipped with a fully operational fire detection and prevention system, which includes fire alarms, smoke alarms, and a sprinkler system. This system is regularly maintained, and is inspected at least once annually.

23.    The Randolph County Jail does not maintain a law library. Inmates are allowed access to any legal materials provided to them by their attorney.

5

24.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _19th_ day of June, 2007

CRAIG DAVIDSON

# Exhibit D
# Randolph County Jail Inmate Request Form, Dated 5/16/07

RANDOLPH COUNTY JAIL INMATE REQUEST FORM

Section _____ B BLOCK    5-16-07
INMATE NAME                    BLOCK        DATE

STATE YOUR REQUEST: We Have Two Inmates that have a problem with being Locked up They Like To Throw Raseill Slwer Beat on The bunk and Make Fun of thoes that cant Spead and write very well and they or going to get hurt

IF MORE SPACE IS NEEDED WRITE ON BACK

if something is'nt done with them there name or Danny Hennderssan and Johnny McComB Please do

DO NOT WRITE BELOW THIS SPACE FOR REPLY BY STAFF ONLY

something with them before some one up here does thank You .

B-BLOCK

Danny Henderson is in C Block - Johnnie McCombs in D Block

APPROVED:        YES _____  NO _____

_Alan Dudley_____        5-16-07
OFFICER SIGNATURE                         DATE

REVIEWED BY ADMINISTRATION:

APPROVED _____

NOT APPROVED _____

REASON FOR CHANGE IF APPLLICABLE: _____

_____

_____

_____

CHIEF OR CAPTAIN'S SIGNATURE                DATE