**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANNY LEE HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:07-cv-452-MEF-WC** |
| | ) | |
| **LATHONIA J. WRIGHT,** | ) | |
| **COMMISSIONER, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**REPLY OF DEFENDANTS JEFFERY FULLER AND SHIRLEY JOHNSON
TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS
OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**</u>

COME NOW Defendants Jeffery Fuller, Randolph County Sheriff, and Shirley Johnson, Randolph County Jail Administrator, sued in their individual and official capacities, and submit this Reply to "Plaintiff's Response and Memorandum of Law to Defendants' Motion to Dismiss." The Defendants rely on the grounds mandating the dismissal of the Plaintiff's Complaint as delineated in their Motion to Dismiss or in the alternative Motion for Summary Judgment ("Motion to Dismiss") and supporting brief, and maintain that the Plaintiff's Response contains no justification for the continuation of this action.

## INTRODUCTION

In his "Statement of Disputed Facts," the Plaintiff attempts to confuse the Court with mischaracterizations of testimony in an effort to create an issue of material fact. However, the facts that the Plaintiff disputes in his Brief in Support of his Response to Defendants' Motion to Dismiss ("Response Brief") have no bearing on any material issue that is dispositive of the Plaintiff's claims against the Defendants in this case.

The Plaintiff attempts to confuse the facts as to whether the Randolph County Jail grievance procedure requires a written grievance. The Plaintiff now argues[1] that the Randolph County Jail has no grievance policy that requires a written grievance. (Doc. 35, pp. 4, 5-7.) The Plaintiff further argues that, even if the grievance procedure requires a written grievance, the Plaintiff should not be required to comply with such procedures because the Randolph County Jail staff is "unclear as to their own policies." (Doc. 35, pp. 4, 8.) To be clear, **the Randolph County Jail has a grievance procedure that requires inmates to file a written grievance**, and the Plaintiff was provided a copy that procedure (Exhibit B, Randolph County Jail Grievance Procedure; Exhibit A, Supplemental Declaration of Craig Davidson, "Supplemental Davidson Decl.," ¶¶ 11-12.) The Plaintiff contends that he requested a grievance form and a copy of the grievance procedures, but that he received two different forms and an ambiguous grievance procedure that does not require a written grievance. (Doc. 35, pp. 5-6.) Despite his mischaracterizations of the facts, Mr. Henderson does not dispute that he was provided a grievance form upon his request, which he filled out on July 9, 2007, as well as an inmate request form so he could request a copy of our grievance policy. (Supplemental Davidson Decl. ¶¶ 6-9.)

The Plaintiff attempts to create an issue of fact as to these Defendants' knowledge of the Plaintiff's medical condition by arguing that they were put on notice of the Plaintiff's medical condition when the Plaintiff purportedly informed officer Vernon Haynes about his epilepsy condition and medications. The Plaintiff, however, does not contest the fact that he never provided these Defendants with this medication or a prescription for this medication, as is required under the Randolph County Jail medical policy (Exhibit B to Defendants' 06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Shirley

---

[1] As discussed below, this latest argument is the Plaintiff's most recent attempt to circumvent the exhaustion requirements of 42 U.S.C. § 1997e(a).

Johnson, ¶ 6), nor does the Plaintiff dispute the fact that he never requested any epilepsy medication from these Defendants or from any medical professional he has seen since being incarcerated in the Randolph County Jail.  The Plaintiff further contends that he informed Nurse Gunnels of his epileptic condition, but that Nurse Gunnels disregarded that information in his diagnosis of the Plaintiff's medical condition.  In fact, Nurse Gunnels acknowledged that the Plaintiff listed a history of seizures on the ER Nursing Triage Sheet, but testified that the Plaintiff never complained to him about his epilepsy condition or the need for anti-convulsant medication, and the Plaintiff does not dispute these facts.  (Exhibit D to Defendants' 06/05/07 Motion to Vacate and Terminate (Doc. 13), Declaration of James Eric Gunnels, ¶¶ 5, 10.)

The Plaintiff further contends that these Defendants "admit that it is their policy NOT to administer medication until an inmate has received a health-screening and physical from a doctor."  (Doc. 35, p. 2 (citing Def. Ex. B, Declaration of Shirley Johnson 10.)  However, in an attempt to confuse this Court by suggesting that the Defendant's own policies prohibited the Plaintiff from receiving "medication prescribed before incarceration," the Plaintiff only cites *half of Shirley Johnson's testimony* regarding jail policy for administration of prescription medication.  (Doc. 35, p. 2.)  Regarding the administration of prescription medication, Shirley Johnson's *entire testimony* was:

> It is the policy of the Randolph County Jail to not administer medication to an inmate until that inmate has received a health-screening and a physical from a doctor, *unless an inmate arrives with prescribed medication or a prescription for medication*, in which case we call the Wedowee Hospital or the Wedowee Clinic to get approval for administering that medication.

(Exhibit B to Defendants' 06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Shirley Johnson, ¶ 7, emphasis added.)  The Plaintiff does not dispute that he did not have on his person any prescription medication or any prescriptions for medication when he was arrested.

# REPLY ARGUMENT

**I.    PLAINTIFF HAS NOT ESTABLISHED DISPUTED FACTS TO OVERCOME HIS FAILURE TO COMPLY WITH THE MINIMUM REQUIREMENTS OF THE PRISON LITIGATION REFORM ACT ("PLRA").**

The Plaintiff argues that he is not required to comply with the Randolph County Jail grievance policy because he did not find out that one existed until July 9, 2007, after the Amended Complaint was filed.  However, as discussed below, ignorance of a jail grievance policy is no excuse for failure to exhaust the administrative remedies provided in that policy.

**A.    The Randolph County Jail grievance procedure provides the Plaintiff adequate administrative remedies, of which he has not availed himself.**

As the Supreme Court recognized in <u>Jones v. Bock</u>, each prison sets its own requirements for what constitutes compliance with its grievance policy:

> In <u>Woodford</u>, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ___, 126 S. Ct. 2378 [] -- rules that are defined not by the PLRA, but by the prison grievance process itself. …. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

127 S. Ct. at 922-23.  To satisfy the minimum requirements of § 1997e(a), the Plaintiff must satisfy **the Randolph County Jail's** requirements, as set forth in their grievance procedure, a procedure that, as the Plaintiff observes, is developed and maintained by the sheriff.

The Plaintiff contends that because the Randolph County Jail Policy Manual does not specifically state that inmates are required to file a written grievance under the policy, the Plaintiff availed himself of the administrative remedies provided therein by simply making "numerous verbal 'grievance reports' to jail officials."  (Doc. 35, p. 6.)  The grievance policy from the Randolph County Sheriff's Office Policy Manual,[2] a copy of which the Plaintiff was

---

[2] The Plaintiff cites the <u>grievance policy</u> from the Randolph County Sheriff's Office Policy Manual in his Response Brief as the <u>jail grievance procedure</u>.  These are two different sets of guidelines, both of which were provided to the Plaintiff on July 9, 2007.  (Supplemental Davidson Decl. ¶¶ 11-12.)

provided at his request, clearly conforms with the procedure for filing an inmate grievance that was provided to the Plaintiff.    (Exhibit B, Randolph County Jail Grievance Procedure.) Furthermore, that grievance procedure *clearly requires the filing of a written grievance*, a requirement with which the Plaintiff did not comply prior to filing this action.

Furthermore, the portion of the Randolph County Sheriff's Office Policy Manual that the Plaintiff quotes as the grievance procedure clearly provides that the sheriff "maintain a system whereby an *inmate may request and make a grievance report* which shall initiate investigations of alleged mistreatment or abuse of inmates." (Plaintiff's Ex. E., Grievance Procedure, emphasis added.)  If an inmate must "request and make a grievance report," it is understood that the inmate is requesting a written form upon which to make his grievance.  The Plaintiff concedes that it is jail "policy to 'place such grievance in the inmate's file for a record of the same.'" (Doc. 35, p. 6.)  A verbal grievance certainly cannot be placed in an inmate's file.

> **B.    The Plaintiff bears the burden of exhausting all administrative remedies under the PLRA, a burden that is not relieved by his own ignorance of those administrative remedies.**

In <u>Jones v. Bock</u>, the Supreme Court recognized that the burden of exhaustion falls on the inmate, not on the jail staff: "to properly exhaust administrative remedies <u>prisoners must</u> <u>'complete the administrative review process in accordance with the applicable procedural rules,</u>' [<u>Woodford v. Ngo</u>,] 548 U.S., [___] at ___, [] 126 S. Ct. 2328  [(2006)] (slip op., at 5) -- rules that are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" 127 S. Ct. at 922-23 (emphasis added).    Therefore, the burden to ensure that the Plaintiff complied with the Randolph County Jail grievance policy so as to satisfy the exhaustion requirements of the PLRA falls on the Plaintiff, not on these Defendants.  He has failed to satisfy that burden, he contends, because he was not aware that such policies existed, as he argues in his

Amended Complaint (Doc. 18, ¶¶ 38, 58, 79, 100, 119, 140, 157.), or because he was not aware that the grievance policy required him to file a written grievance, as he argues in his Response Brief. (Doc. 35, p. 6.) Regardless of the theory he advances, the Plaintiff has failed to meet his burden of exhausting all administrative remedies under the PLRA.

To the extent that the Plaintiff still contends he should be excused from the minimum requirements of § 1997e(a) due to his lack of knowledge of those requirements, the Defendants reassert the argument in their Opposition Brief that an inmate's purported ignorance of a jail grievance policy cannot excuse his burden to exhaust all administrative remedies under the PLRA. See, e.g., Evans v. Marshall, ___ F. Supp. 2d ___, 2007 WL 842056, *5 (S.D. Ga. 2007) ("[I]n the instant case, Plaintiff's alleged ignorance of the grievance policy at the Jail does not excuse him from the PLRA's exhaustion requirement.).

Because Plaintiff has failed to exhaust all administrative remedies available to him, this action is precluded by the provisions of the PLRA that require an inmate to exhaust all administrative remedies as a prerequisite to bringing an action under § 1983. Because Plaintiff's claims in his Amended Complaint are barred by the PLRA, they must be dismissed.

### C. The Plaintiff has actual knowledge of the grievance procedure at the Randolph County Jail.

Contrary to his contentions in his Amended Complaint and in his Response Brief, Plaintiff is not ignorant of the Randolph County Jail Grievance Policy and Procedure. On June 29, 2007, *fourteen days prior to filing Plaintiff's Response Brief*, the Plaintiff filed a grievance form with the jail staff, complaining that his constitutional rights had been violated because he was kept awake at night by a television. (Exhibit C, Inmate Records of Danny Henderson, "Inmate Records," Grievance Form, 6/29/07.) On July 9, 2007, the Plaintiff received a copy of the grievance form he filled out on June 29, as well as copies of the grievance policy set out in the Randolph County Jail Policy Manual and the grievance procedure. (Supplemental Davidson

Decl. ¶¶ 7, 11-12.)  On July 9, 2007, **four days prior to filing this Response Brief**, the Plaintiff filled out and returned a second grievance form and received a response, as provided by the jail grievance procedure.  (Exhibit D, Inmate Records, Grievance Form, 7/9/07.)  It is clear that the Randolph County Jail has a grievance procedure that requires the submission of a written grievance form; a procedure of which the Plaintiff is, and has been well aware, despite his allegations to the contrary,[3] but the Plaintiff has refused to avail himself of those administrative remedies as to all of his claims.

## II.     THE PLAINTIFF IS NOT ENTITLED TO EQUITABLE RELIEF.

The Plaintiff's request for equitable relief is barred because the Plaintiff lacks standing to pursue an equitable remedy.  A plaintiff seeking the jurisdiction of the federal courts must show a personal stake in the outcome.  Baker v. Carr, 369 U.S. 186, 204 (1962).  The plaintiff must have sustained, or is about to sustain, some direct injury.  Golden v. Zwickler, 394 U.S. 103, 109-110 (1969).  Of direct relevance to the present case, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

In City of Los Angeles v. Lyons, the Supreme Court held that the plaintiff lacked standing, because his claims rested solely on pure speculation that he **might** be stopped by the police, **might** be arrested, and **might** be subjected to another chokehold.  Id., at 99-100, 108.  The Plaintiff's claims for injunctive relief, here, are even more speculative than those in Lyons.  The Plaintiff's claims are premised on the following hypothetical scenarios: the Plaintiff **might** suffer

---

[3] In his Response to the Defendants' Opposition to Award of Attorney's Fees, the Plaintiff unequivocally states: "the Defendants themselves have **failed to provide the means for [the Plaintiff] to meet the requirements of the PLRA**;" and "[the Plaintiff] has exhausted all remedies that were available to him due to the fact that **no such remedies were, or are, as of the date of this filing, available** to inmates at the Randolph County Jail;" "[the Plaintiff] … can show this Honorable Court that **he was never provided with any grievance procedures** nor informed of any administrative remedies;" and "[the Plaintiff] would argue that **he has not filed a grievance report because no such alternatives were made available to him**."  (Doc. 31, pp. 6-7, emphasis added.)  The Plaintiff makes each of these representations to this Court despite the fact that he requested, was provided, filed out, and filed a grievance form **three days prior to the date of that filing**.  (Inmate Records, Grievance Form, 6/29/07.)

harm from an epilepsy condition he claims to have, but has not verified by medical documentation, and for which he had voluntarily stopped taking medication 3-4 months prior to his arrest, and for which he has not requested medication since his incarceration; he **might** be transferred back into general population, where he **might** suffer harm as a result of conditions that he **speculates** are dangerous: sharing a cell block with  inmates "rumored" to have a communicable disease; sharing a cell block with convicted felons while he is awaiting trial for **murder** after eluding authorities for three years; and, the jail not "appear[ing]" to have a fire prevention system.  Such speculative future conduct, even if it did violate the Plaintiff's rights, does not afford the Plaintiff standing to bring this action.  Lyons, 461 U.S. at 108.

## III.    THE PLAINTIFF IS NOT ENTITLED TO MONETARY DAMAGES AGAINST THESE DEFENDANTS.

In his Response Brief, the Plaintiff concedes that "all claims brought against Fuller and Johnson in their official capacity [sic] are brought only for prospective injunctive relief."  (Doc. 35, p. 9.)  The Plaintiff apparently concedes that Sheriff Fuller and Administrator Johnson are entitled to sovereign immunity from claims for monetary damages, and that they are not persons for purposes of § 1983 liability.   To the extent that the Amended Complaint states claims for monetary damages against these Defendants in their individual capacities, they are precluded.

### A.    In their individual capacities, Sheriff Fuller and Administrator Johnson are entitled to qualified immunity from the Plaintiff's claims for damages under 42 § 1983.

In their individual capacities, the Defendants are protected by qualified immunity from the Plaintiffs' § 1983 claims.  In the qualified immunity analysis, the first inquiry is whether the Plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The second inquiry is, if a constitutional violation is stated, whether this right was "clearly established" such that these defendants had "fair warning" that the conduct they undertook would violate Plaintiff's constitutional rights.  Hope v. Pelzer, 122 S. Ct. 2508, 2515

(2002). "At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective reasonableness.'" Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

### 1.    These Defendants acted within their discretionary authority.

In his Amended Complaint, the Plaintiff makes wholly vague and conclusory allegations[4] that do not establish that his constitutional rights have been violated by the Defendants. The Plaintiff does, however, establish that these Defendants acted within their power and authority as sheriff and jail administrator at all times relevant to the Amended Complaint. The Plaintiff claims in his Response Brief that these Defendants "have offered [nothing] more than vague assertions that they were acting within their discretionary authority." (Doc. 35, p. 11.)

In order to establish that he was acting within his "discretionary authority," public officials like Fuller and Johnson need only show "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir.1981)). Courts should not be "overly narrow" in interpreting this requirement. Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994).[5] As this Court has observed, "the determination that an officer was acting within his discretionary authority is quite a low hurdle to clear." Godby v. Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1401 (M.D. Ala. 1999).

---

[4] Although the Plaintiff claims to have met the Eleventh Circuit's heightened pleading standard, the Defendants contend he has not done so, as is discussed in the Defendants' Motion to Dismiss (Doc. 29, pp. 14-16, 26, 28, 30, 34.) The Plaintiff's mere conclusory suspicions cannot amount to an allegation of constitutional violation. See Marsh, 268 F.3d at 1036 n.16; Associated Builders, Inc. v. Alabama Power Co., 505 F.2d 97, 100 (5th Cir. 1974).
[5] Interestingly, although the Plaintiff relies on Jordan v. Doe, the Eleventh Circuit, there, held that where the federal marshalls' conduct was pursuant to the performance of there duties and was within the scope of their authority, they acted within their discretionary authority.

Sheriff Fuller and Administrator Johnson easily clear the "low hurdle" of demonstrating that any dealings they had with Henderson at the Randolph County Jail were within their discretionary authority. Paragraphs 10 and 11 of the Amended Complaint describe Fuller as the Sheriff of Randolph County and Johnson as an agent or officer of the Sheriff. Paragraphs 16 and 17 further establish that Fuller has general supervision of the jail, its personnel, its policies and procedures with Johnson being delegated authority over jail maintenance. In addition, Defendants have submitted sworn affidavits describing their duties as they relate the jail operation and maintenance. This testimony is undisputed. Since all of the Plaintiff's allegations arise out of his relationship with the jail, its officers, operation and/or maintenance, there are simply no grounds to conclude anything other than Fuller and Johnson were acting in their discretionary authority

The Eleventh Circuit in <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252 (11th Cir. 2004) warned that:

> "***the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology***." ***In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances***.

370 F.3d at 1266 (emphasis added) (citation omitted).

Consequently, the inquiry here is not whether Fuller and Johnson violated the Plaintiff's constitutional rights—that is the allegation in every § 1983 case. Instead, the reviewing court must, according to <u>Holloman</u>, "look to the general nature of the defendant's action." <u>Holloman</u>, 370 F.3d at 1266.

The Middle District has already addressed claims similar to those made by the Plaintiff against an Alabama sheriff and staff members finding that such allegations were not an

obstacle to qualified immunity in terms of discretionary authority.  <u>Adams v. Franklin</u>, 111 F. Supp.2d 1255, 1266 -67 (M.D. Ala. 2000).

Defendants agree with Plaintiff on the point that a finding of "discretionary authority" must be based on "objective circumstances" and more than a "bald statement."  In the instant case, the objective circumstances are present in the fact that the Plaintiff had made allegations which arise out of the operation and maintenance of the Randolph County Jail.  Alabama law generally delegates those duties to the sheriff, his staff, and under certain circumstances, the County Commission.  <u>See</u> <u>generally</u> <u>Ala</u>. <u>Code</u> § 14-16-1 (providing that "[t]he sheriff has the legal custody and charge of the jail in his county and all prisoners committed thereto, except in cases otherwise provided by law, and may appoint a jailer for whose acts he is civilly responsible."); <u>Adams</u>, 111 F. Supp. at 1267 (observing that "[d]etaining prisoners in jail and obtaining medical treatment for prisoners are statutory duties of the sheriff").  Finally, undisputed sworn testimony had established that Sheriff Fuller and Officer Johnson interfaced with Henderson only in the context of executing their statutory duties, and therefore within their discretionary authority.  Plaintiffs have offered nothing in response.

> 2.    **The Plaintiff cannot show a violation of his federally protected rights.**

> a.    **Medical Care**

The Plaintiff appears to be making a claim for denial of medical care both prior to this Court's injunction, as well as afterwards.  These Defendants never received a medical request form from the Plaintiff.  (Exhibits A, B to Defendants' 06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Shirley Johnson, ¶ 8, Declaration of Jeffery Fuller, ¶ 8.)  Even if the Plaintiff did file a medical request form and was denied treatment, these Defendants had no knowledge of it.  To the extent that the Plaintiff did make a medical request and was denied treatment, it was done so in violation of jail policy and without the knowledge of

these Defendants.  Such lack of knowledge on the part of Defendants removes any foundation for Plaintiff's deliberate indifference claim.  See Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994), (reasoning that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  To the extent that the Plaintiff claims he is still being denied medical treatment,[6] these Defendants have ensured that he is receiving treatment from a medical professional, Nurse Gunnels, and have no control over the treatment he actually receives.

In his Response Brief, the Plaintiff has cited no authority to support his conclusory allegations that his medical condition is a "serious medical condition," nor has the Plaintiff cited any authority to support his conclusion that the Defendants' actions amounted to deliberate indifference.  (Doc. 35, pp. 12-13.)  In fact, these Defendants have tried to obtain the Plaintiff's medical records as to his epilepsy condition, but the Plaintiff has refused to sign a medical release form that would provide those medical documents to these Defendants.  (Exhibit B to Defendants' 06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Shirley Johnson, ¶ 15; Exhibit C to Defendants' 06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Craig Davidson, ¶ 16.)  Since the Plaintiff's initial refusal to sign a medical release form, these Defendants have again asked him to sign another medical release form, and counsel for these Defendants has even obtained an agreement from the Plaintiff's counsel that he would sign a medical release to provide these Defendants with the Plaintiff's medical records relevant to his epilepsy condition so they could provide him with any necessary treatment.  However, as of the date of this filing, these

---

[6] If the Plaintiff is claiming an on-going denial of medical treatment, he is doing so despite his representations at the June 6, 2007, status conference, where he conceded that he was receiving medical treatment.

Defendants **have not** been provided with those medical documents.  Surely, such attention to the Plaintiff's medical condition cannot amount to deliberate indifference, nor can the Plaintiff's own inattention to his medical condition serve as the basis for his deliberate indifference claim.

### b. Overall Conditions of Confinement

The Plaintiff's claims, here, are for the **overall conditions of his confinement**, as opposed to any individualized condition that **by itself** violates his constitutional rights.  (See, e.g., Doc. 35, pp. 14-15.)  As the Supreme Court held in Wilson v. Seiter, 501 U.S. 294, 305 (1991), "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment **when no specific deprivation of a single human need exists**."  (Emphasis added.) Here, the Plaintiff has failed to allege any specific deprivation of his human needs, but lists a plethora of conditions that together, he argues, "constitute an Eighth Amendment violation." (Doc. 35, p. 15.)  Because the Plaintiff has not demonstrated that the conduct of these Defendants rises to "something more than ordinary lack of due care for the prisoner's interest or safety," his claim for the overall conditions of his confinement must be dismissed.  Wilson, 501 U.S. at 299.

Further, as addressed in the Defendants' Motion to Dismiss, the Plaintiff does not allege in his Amended Complaint what type of physical injury he has suffered as a result of the Defendants' actions.  (See Doc. 29, pp. 25-28.)  However, as the Eleventh Circuit has held, "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.**"** Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002).

The Plaintiff cites Marsh v. Butler County, 268 F.3d 1014 to support his overall conditions claim.  In Marsh, the Eleventh Circuit held, that a county sheriff may be held liable for deliberate indifference to conditions of confinement when the plaintiff alleges, "1) an

objective, substantial risk of serious harm to inmates existed,[7] 2) the Sheriff was subjectively aware of this risk, 3) the Sheriff responded in an objectively unreasonable way to this known risk, and 4) the constitutional violation caused Plaintiffs' injuries."  Marsh, 268 F.3d at 1030. Here, the Plaintiff attempts to allege in his Amended Complaint an objective risk of substantial harm, but he has failed to produce evidence that Sheriff Fuller or Administrator Johnson was subjectively aware of that harm.[8]  Neither has the Plaintiff demonstrated that he has suffered any injuries, much less injuries caused by the conditions of his confinement.  Accordingly, even under Marsh, the Plaintiff's claim for his overall conditions of confinement must fail.

As to his access to courts claim,[9] the Plaintiff ignores the Supreme Court's holding in Lewis v. Casey, 518 U.S. 343, 351 (1996), that "Bounds [v. Smith], 430 U.S. 817 (1977),] did not create an abstract, freestanding right to a law library or legal assistance," and that "[a]lthough Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite."  The Plaintiff argues to the contrary that he "may have been harmed," despite filing a *pro se* complaint and being appointed an attorney, because if he had access to a law library he **could have** learned that he was entitled to a grievance procedure, and that this purported lack of knowledge "**could be** detrimental to Henderson's claim."  (Doc. 35, p. 23, emphasis added.)  The Plaintiff has failed to state an access to courts claim under Lewis, because he has not suffered an actual injury, having filed a *pro se* complaint,

---

[7] The disparity between the detailed allegations of the risk of harm and actual harm from the conditions of confinement in the plaintiff's complaint in Marsh, and the generic, conclusory allegations of speculative harm in the Plaintiff's Amended Complaint here, is sufficient to warrant render the Eleventh Circuit's holding in Marsh inapt to the present case.  Compare, Marsh, 268 F.3d at 1047 (Appendix, Complaint, ¶¶ 13-58.), with Doc. 18, ¶¶ 24-37.

[8] The only evidence submitted to support these Defendants' subjective knowledge of the risk of harm are four newspaper articles that are inadmissible hearsay that should be stricken from the record, as argued in the contemporaneously filed Motion to Strike.

[9] The Plaintiff has also lumped into his conditions of confinement claim separate claims for access to courts, based on the absence of a law library in the Randolph County Jail, and for inadequate exercise.  It should be noted that the Plaintiff's access to courts claim cannot be consolidated into an overall conditions of confinement claim, because it implicates the Sixth Amendment, whereas the Plaintiff's claim for the overall conditions of confinement implicates the Fourteenth Amendment, and the Plaintiff does not bring any of his claims in the Amended Complaint under the Sixth Amendment.

14

been appointed counsel, and filed an amended complaint.  See Crenshaw v. Lister, ___ F. Supp. 2d ___ 2005 WL 1027326, *7 (M.D. Fla. 2005) ("If plaintiff is referring to civil claims against the officers, there is obviously no denial of his right of access to court because he has in fact filed a complaint against those officers.").

As to his claim for inadequate exercise, the Plaintiff contends that "it is a natural deduction that Henderson's lack of consistent exercise is directly related to a punishment for filing his complaint."  (Doc. 35, p. 23.)  However, the Plaintiff has offered no evidence to indicate that he is being singled out for denial of exercise as retribution.  In fact, the only testimony he provided the Court regarding this claim, is that "there is very little recreation for inmates and occasionally *we* are given 30 minutes outside during which time we are shackled." (Pla. Ex. A, Affidavit of Danny Henderson, p. 4, emphasis added.)  The Plaintiff has failed to allege in his Amended Complaint, and the record does not indicate, that these alleged actions of Sheriff Fuller and Administrator Johnson were "intentionally imposed … for a punitive purpose." Wilson v. Blankenship, 163 F.3d 1284, 1291-92 (11th Cir. 1998).

### c.    First Amendment

In his Response Brief, the Plaintiff had cited no authority to support his conclusory allegations that these Defendants are promoting a religious preference by allowing an outside minister to visit the jail.  The Plaintiff claims that "[t]here is no valid peneological interest in having religious meetings in cell blocks" (Doc. 35, p. 20.); however, in the same breath, the Plaintiff acknowledges that there is no other meeting place outside the cell block to hold a religious meeting. The Plaintiff, apparently, does not believe these Defendants have a valid peneological interest in ensuring that the inmates hold their religious meetings in a secure location under the surveillance of the jail staff.

3.    **The Plaintiff has not shown that the Defendants' conduct violated the Plaintiff's "clearly established" federal rights.**

The Plaintiff claims that it was clearly established in April, 2007, that the conduct of these Defendants was unconstitutional.   However, the Plaintiff has cited no caselaw that holds unconstitutional the conduct of a county sheriff or jail administrator under similar circumstances.

a.    **Medical Care**

None of the caselaw that the Plaintiff cites to show these Defendants were on notice that their conduct was unconstitutional, with respect to the Plaintiff's claim for denial of medical care, would have actually provided these Defendants "fair notice" that their conduct was unconstitutional.[10]   As the Eleventh Circuit has held in Vinyard v. Wilson, 311 F.3d 1340, 1351-52 (11th Cir. 2002), "most judicial precedents are tied to particularized facts and fall into this [fact-specific] category," and where "fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies."   Neither does the Plaintiff present any cases that "control 'with obvious clarity' a wide variety of later factual circumstances," as the cases he presents are tied to particularized facts.  Vinyard, 311 F.3d at 1351; see also Brosseau v. Hagen, 543 U.S. 194, 199 (2004) ("Of course, in an obvious case, these standards can "clearly establish" the answer, even without a body of relevant case law.") (*per curiam*).

---

[10] See Estelle v. Gamble, 429 U.S. 97 107, 108 (1976) (holding that the plaintiff's claims against a ***prison doctor and medical director*** were "not cognizable under § 1983," but made no findings as to "whether a cause of action has been stated against the other prison officials."); DeShaney v. Winnebago County Dept. of Social Serv., 489 U.S. 189 (1989) (refusing to hold ***county social service workers*** liable for the failure to protect a child from his father's beatings); West v. Atkins, 487 U.S. 42, 54 (1988) (holding that "a physician employed by North Carolina to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury."); Rhodes v. Chapman, 452 U.S. 337 (1981) (refusing to hold unconstitutional the ***conditions of confinement*** at the Southern Ohio Correctional facility).

### b.    Overall Conditions of Confinement

Neither would the following caselaw that the Plaintiff cites to show these Defendants were on notice that their conduct was unconstitutional, with respect to the Plaintiff's conditions of confinement claim, actually provide these Defendants had "fair notice" that their conduct was unconstitutional.[11]  Here, the caselaw presented by the Plaintiff either 1) does ***not hold a county sheriff or jail administrator liable for a claim of overall conditions of confinement***, <u>Vinyard</u>, 311 F.3d at 1351-52; 2) does not "control 'with obvious clarity' a wide variety of later factual circumstances," as they are tied to particularized facts, <u>Vinyard</u>, 311 F.3d at 1351; <u>Brosseau</u>, 543 U.S. at 199; or 3) is inapt to the factual circumstances here present.  In any event, this caselaw would not have put these Defendants on notice that their conduct violated the Plaintiff's clearly established rights.

### c.    First Amendment

Similarly, the caselaw that the Plaintiff cites to show these Defendants were on notice that their conduct was unconstitutional, with respect to the Plaintiff's First Amendment claim, would not have actually provided these Defendants had "fair notice" that their conduct was unconstitutional.[12]  Here, not only does the caselaw presented by the Plaintiff ***not hold unconstitutional the conduct***

---

[11] <u>Helling v. McKinney</u>, 509 U.S. 29 (1993) (holding that the plaintiff stated an Eighth Amendment claim for ***long-term exposure to environmental tobacco smoke*** against prison officials in the Nevada state prison system); <u>Bounds</u>, 430 U.S. at 830 (affirming a district courts order requiring a ***state prison system*** to provide legal materials to inmates as "one constitutionally acceptable method to assure meaningful access to the courts."); <u>Lewis</u>, 518 U.S. at 359 (rejecting inmates' access to court claims for ***failure to show actual injury***, and holding that where only two inmates suffered an actual injury, "[t]he constitutional violation has not been shown to be systemwide, and granting a remedy beyond what was necessary to provide relief to [those two inmates] was therefore improper."); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290 (11th Cir. 1998) (holding that "[e]ven if these space concerns were within the scope of the[] discretionary duties [of the warden and assistant warden of the Montgomery City Jail], we still conclude that Blankenship and Hall are protected by qualified immunity because failure to provide a law library for the federal detainees housed there or specific square footage for inmates to exercise violates no clearly established law for qualified immunity purposes.").  Although the Plaintiff cites <u>Marsh v. Butler County</u>, 268 F.3d 1014, in support of his overall conditions claim, that case would not have provided these Defendants notice that their conduct was unconstitutional, because, as discussed above, <u>Marsh</u> is inapt to the facts and allegations in this case.

[12] <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979) (refusing to hold ***federal prison officials*** liable under § 1983 for the plaintiffs' conditions of confinement and First Amendment claims); <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974) (holding that a California statute limiting state prisoners' ability to be ***interviewed by the press*** did not violate the inmates' First Amendment rights.).

*of a county sheriff or jail administrator*, none of this caselaw Plaintiff presents has facts remotely similar to the circumstances in this case, much less materially similar.  Marsh, 268 F.3d at 1032; Vinyard, 311 F.3d at 1351-52.  Neither do these cases "control 'with obvious clarity' a wide variety of later factual circumstances," as they are tied to particularized facts.  Vinyard, 311 F.3d at 1351; Brosseau, 543 U.S. at 199.

  **4. The Plaintiff has not established personal involvement on behalf of these Defendants as to the claims in his Amended Complaint.**

  The Plaintiff does not contest his failure to allege these Defendants' personal involvement in his deliberate indifference and First Amendment claims.  Therefore, these claims should be dismissed on this basis alone.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that a party who fails to address an issue has waived it); Lyes v. City of Riviera Beach, Fla., 126 F.3d 1380, 1388 (11th Cir. 1997) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments. . . ."); Coalition of the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000) (party's failure to brief and argue an issue is grounds for considering it abandoned).  See also Sheesley v. The Cessna Aircraft Co., ___ F. App'x ___, 2006 WL 1084103, *30 n.14 (D. S.D. 2006) ("Plaintiffs do not dispute this argument in their response brief, and thus, the court finds plaintiffs have waived their claim based upon implied warranties.") (not reported in F. Supp. 2d); Bruzer v. Danek Medical, Inc., ___ F. App'x ___, 1999 WL 613329, at *5 n.5 (D. Minn. 1999) ("The Plaintiffs have not responded to the Defendants' argument regarding their claim for manufacturing defect, apparently waiving that claim.  The Court, therefore, will grant the Defendants' Motion with regard to the claim for manufacturing defect.") (not reported in F. Supp. 2d).

To the extent that the Plaintiff contends that these Defendants were personally involved in his claim for overall conditions of confinement, he does so with evidence that he submitted with his Response Brief. The affidavits and newspaper articles submitted in support of the Plaintiff's conditions of confinement claim have no bearing whatsoever on the dispositive issues in this case, are irrelevant to the Plaintiff's claims in this lawsuit, are inadmissible hearsay, and are inadmissible to prove the "facts" stated therein. See Fed. R. Evid. 802; Goetz v. Bank of Kansas City, 119 U.S. 551, 560 (1887); Poretto v. U.S., 196 F.2d 392, 395 (5th Cir. 1952); Dowdell v. Chapman, 930 F. Supp. 533, 541 (M.D. Ala. 1996).[13]  For the reasons set forth in the contemporaneously filed Motions to Strike, this evidence should be stricken from the record, and all references to this evidence in the Plaintiff's Response Brief should be disregarded.

However, even if the affidavits and newspaper articles were relevant to the Plaintiff's conditions of confinement claim in this action, they would be insufficient to establish supervisory liability under Brown v. Crawford, 906 F.2d 667 (11th Cir. 1990).  The cases that Brown cites for the proposition that a causal connection can be established by a "history of widespread abuse that puts the responsible supervisor on notice of the need to correct the alleged deprivation," Brown, 906 F.2d at 671, define "a history of widespread abuse" in terms of decided cases that have held past conditions unconstitutional.  See, e.g., Clark v. Evans, 840 F.2d 876, 885 (11th Cir. 1988) ("However, it is clear that four cases in four years would have been insufficient to put Evans on notice, especially since the record is clear that such matters were handled at lower administrative levels and would not have come to the attention of Evans.").  Here, the subject newspaper articles submitted by the Plaintiff cannot be deemed to have placed these Defendants on notice of "a history of widespread abuse" for purposes of personal involvement, under Brown, and there are *no cases* that have held unconstitutional the conditions

---

[13] Decisions of the Fifth Circuit Court of Appeals handed down on or before close of business September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

of confinement at the Randolph County Jail within the past twelve years.[14]   Accordingly, the

Plaintiff has failed to allege that these Defendants were personally involved in his conditions of

confinement claim.  Accordingly, these claims should be dismissed.

## CONCLUSION

Based on the foregoing arguments and those made in the Motion to Dismiss, Defendants

Jeffery Fuller, Sheriff of Randolph County, Alabama, and Shirley Johnson, Randolph County

Jail Administrator, request that this Honorable Court enter an order dismissing all claims against

them in this action.

Respectfully submitted this 24th day of July, 2007.

> s/Kendrick E. Webb
> KENDRICK E. WEBB, Bar No. WEB022
> C. RICHARD HILL, JR., Bar No. HIL045
> JOSEPH L. HUBBARD, JR., Bar No. HUB015
> ATTORNEYS FOR DEFENDANTS JEFFERY
> FULLER, AND SHIRLEY JOHNSON
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36124
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  kwebb@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of July, 2007, I have electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system, who will send notification to
the following CM/ECF participants:  **Kesa M. Johnston, Esq. and Jay Lewis, Esq.**

> s/Kendrick E. Webb
> OF COUNSEL

---

[14] Jeffery Fuller has been the Sheriff of Randolph County for the past twelve years.  (Exhibits A to Defendants'
06/25/07 Memorandum Brief in Support of their Motion to Dismiss (Doc. 28), Declaration of Jeffery Fuller, ¶ 1.)

**Exhibit A**
**Supplemental Declaration of Craig Davidson**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DANNY LEE HENDERSON,               )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )   CIVIL ACTION NO. 3:07-cv-452-MEF-WC
                                   )
LATHONIA J. WRIGHT,                )
COMMISSIONER, et al.               )
                                   )
        Defendants.                )

## DECLARATION OF CRAIG DAVIDSON
## PURSUANT TO 28 U.S.C. § 1746.

STATE OF ALABAMA          )
                          )
COUNTY OF RANDOLPH        )

1.    My name is Craig Davidson. I am over the age of nineteen and am competent to execute this declaration. The statements made in this Declaration are based on my personal knowledge. I am the Assistant Jail Administrator of the Randolph County Jail. I have served the Randolph County Sheriff's Department in that capacity since October 2002. Before that I served as a Sergeant at the Chambers County Sheriff's Department for three years and as a jailer for two months. I am a graduate of Jail Management School.

2.    I am familiar with Danny Lee Henderson, due to the fact that he has been incarcerated in the Randolph County, Alabama Detention Facility.

3.    On June 29, 2007, Mr. Henderson, requested and received a copy of a grievance form, which I provided him.

4.    Mr. Henderson filled this grievance form out complaining that his constitutional rights had been violated because he was kept awake at night by a television.

5.    Mr. Henderson returned this grievance to a jailer, and it received a response in accordance with the Randolph County Jail grievance procedure. I certify that Exhibit C to the Defendants' Reply Brief, which is kept at the Randolph County Jail in the regular course of business, is a true and correct copy of this June 29, 2007, grievance form filed by Mr. Henderson.

6.    On July 9, 2007, Mr. Henderson requested another grievance form and a copy of our grievance policy.

7.    I provided Mr. Henderson a copy of the same Randolph County Jail grievance form that I provided him on June 29, 2007. I also provided Mr. Henderson with a copy of the inmate request form so he could request a copy of our grievance policy and procedure.

8.    Mr. Henderson filled the grievance form out and returned it to a jailer. As before, Mr. Henderson's grievance received a response in accordance with the Randolph County Jail grievance procedure.

9.    To my knowledge, Mr. Henderson never filed the inmate request form to receive a copy of the grievance procedure, as I instructed him to do. Instead, he requested a copy of the grievance procedure in the grievance form he filled out and returned on July 9, 2007. I certify that Exhibit D to the Defendants' Reply Brief, which is kept at the Randolph County Jail in the regular course of business, is a true and correct copy of this July 9, 2007, grievance form that Mr. Henderson filed.

10.    In response to this request, I provided Mr. Henderson with a copy of the page out of the Randolph County Jail Policy Manual that sets out the policy for the sheriff to establish, maintain, and implement a grievance procedure, and I provided Mr. Henderson with a copy of the grievance procedure that had been in place since January 2003, when revisions were made to

2

an earlier grievance procedure. I certify that Exhibit B to the Defendants' Reply Brief, which is kept at the Randolph County Jail in the regular course of business, is a true and correct copy of the grievance procedure that I provided to Mr. Henderson.

11.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the _29th_ day of July, 2007

_____
CRAIG DAVIDSON

3

# Exhibit B
# Randolph County Jail Grievance Procedure

Policy and Procedure Directive:

Inmate Grievance Procedure

It is the policy of the Randolph County Jail that all inmates be allowed to file grievances on their own behalf. Each inmate that is filing a grievance is to sign their own grievances. There will not be any grievances accepted that are signed by more than one inmate. This will ensure that each inmate receives the proper attention that his/her grievance is due. The inmate is to ask a staff member for a grievance form and the staff members are directed to deliver the grievance to the inmate.

Inmate Procedure:

An inmate has the right to request a grievance form from any staff member. Once the inmate receives the grievance he/she is to fill out the grievance stating only one grievance per form. Should the inmate have more than one grievance then he/she is to receive as many forms as necessary, but only one grievance per form. The inmate is to turn their grievance into any staff member.

Officer Procedure:

Any staff that is requested to deliver an inmate grievance form is ORDERED to do so. The grievance form should be delivered back to the requesting inmate as expeditiously as possible. The officer that is in receipt of the inmate grievance is to sign the form giving acknowledgement that the grievance has been received. The officer that receives the form are to immediately take the form to the shift supervisor.

Supervisor:

The shift supervisor is to investigate the incident being grieved and make a finding within 72 hours of receipt of the grievance. Should the grievance be directed to a particular supervisor then the grievance will be sent directly to the captain.

Appeal:

Should the inmate wish to appeal the answer of the shift supervisor then he/she are afforded the appeal process. The inmate appeal should be directed in writing to the captain. The captain will investigate the appeal and have an answer to the inmate within 72 hours of receipt of the appeal, excluding weekends and holidays. Should the inmate not be satisfied with the answer received from the captain then the next appeal is to be sent in writing the jail administrator. The jail administrator will have 7 days to answer the appeal. If the inmate is still not satisfied with the answer on the grievance then he/she may appeal the decision of the jail administrator's answer to the Sheriff. The Sheriff will have 7 days to investigate and return an answer to the inmate. The Sheriff may at his/her discretion inform the inmate in writing that a period of 7 days is not adequate for an

investigation to have been completed. Each answer will be returned to the inmate in writing and a copy placed in the inmates jail file.

# Exhibit C
# Inmate Records of Danny Henderson
# Grievance Form, 6/29/07

# RANDOLPH COUNTY JAIL
# INMATE REQUEST FORM

**NOTE: PLEASE PRINT ALL INFORMATION**

NAME: Danny Henderson          CELL: C
DATE: June 29, 2007, Friday    TIME: 12:30 P.m.

**PLEASE CHECK ONE OF THE FOLOWING:**

_____ **MEDICAL**    ___✓___ **GREIVANCE**    _____ **REQUEST FOR SPECIAL VISIT**

_____ **OTHER** _____

**BRIEFLY STATE YOUR REQUEST THEN GIVE TO JAIL OFFICER**

Officers on duty Thursday Night refused to take Television and enforce Bedtime Rules, I was unable to Sleep. The same happened one night earlier this week. The same is expected this weekend, Sleep deprivation is unconstitutional. Please Help

**DO NOT WRITE BELOW THIS LINE—FOR REPLY ONLY**

We were not aware that TVs were not removed, but we will remind each shift supervisor. TV's should be removed by 1000 PM Sun-Thurs + 12AM Fri-Sat. If you have further issues notify Capt. Craig Davidson in writing. (KT)

**COPIES TO:** _____ **INMATE**
_____ **INMATE FILE**
_____ **DISCIPLINARY HEARING BOARD**
_____ **OTHER** _____

**SIGNATURE OF JAIL OFFICER RECEIVING ORIGINAL REQUEST**

Ronald Smith

DATE: 6-29-07 TIME: 1330

# Exhibit D
# Inmate Records of Danny Henderson
# Grievance Form, 7/9/07

# RANDOLPH COUNTY JAIL
# INMATE REQUEST FORM

NOTE: PLEASE PRINT ALL INFORMATION

NAME: _Danny Henderson_     CELL: _H_
DATE: _July 9, 2007_     TIME: _6:00 am_

PLEASE CHECK ONE OF THE FOLOWING:

_____MEDICAL     _XX ✓_ GREIVANCE     _____ REQUEST FOR SPECIAL VISIT

_____ OTHER _____

---

BRIEFLY STATE YOUR REQUEST THEN GIVE TO JAIL OFFICER

_Access to Legal Books other than one Bible Book is requested Again. Such Rules are Unconstitutional. Again Requesting Greivance Appeal Procedures if Any._

DO NOT WRITE BELOW THIS LINE—FOR REPLY ONLY

COPIES TO: _____ INMATE
_____ INMATE FILE
_____ DISCIPLINARY HEARING BOARD
_____ OTHER

---

SIGNATURE OF JAIL OFFICER RECEIVING ORIGINAL REQUEST

_Sgt J R Welford_

DATE: _7-9-07_ TIME: _04:20_

_As stated before you may have any legal materials that your attorney provides. The only exception is hard back Materials for security purposes. Copy of greivance procedure forwarded to you._

_07/09/07 @ 1305 hrs._